**TRAVELER'S INSURANCE COMPANY,**
Plaintiff,

v.

**UNITED STATES of America,**
Defendant.

**Civ. A. No. 66–G–68.**

United States District Court
S. D. Texas,
Galveston Division.

April 3, 1968.

Order May 29, 1968.

James R. Coffee, Houston, Tex., for plaintiff.

Frank C. Cooksey and William B. Butler, Asst. U. S. Attys., Houston, Tex., for defendant.

## MEMORANDUM AND ORDER:

NOEL, District Judge.

This is a suit brought under the Federal Tort Claims Act, 28 U.S.C. § 1346 (b) and §§ 2671–2680, against the United States for contribution and indemnity.

On December 10, 1964, Mrs. J. J. (Violet) Jones received an injury to her back when she fell on the porch of the United States Post Office in Angleton, Brazoria County, Texas. The facts and circumstances surrounding Mrs. Jones' accident on December 10, 1964 are as follows. The Angleton post office building has a southerly front and faces Orange Street. The public enters the post office through a double door at the front (south) of the building. This entrance is off-center and near the east end of the building. There is a porch in front of the public entrance which extends about two-thirds the width of the building and is covered by an extension of the building's roof. There are two sidewalks leading to the porch and public entrance of the post office; one from the south, connecting the building and Orange Street, and one from the west, connecting the building and a patron parking lot located on the west side of the building. The south sidewalk leads directly to the entrance of the post office, while the west sidewalk runs along the front of the building and turns north onto the porch at a point about twenty feet west of the entrance. Thus a person who uses the west sidewalk to approach the building must turn left onto the porch, then back to the right and walk along the porch some twenty feet to the entrance. The sidewalks and the porch are constructed of concrete, but the sidewalks have a "broom" or rough-surface finish while the porch has a "steel trowel" or smooth-surface finish. Both of the sidewalks slope up to the level of the porch, thereby forming an incline or ramp to the porch level; thus, there are no steps between the sidewalks and the porch.

It had been raining most of the day on December 10, 1964, and it was raining at 4:30 p. m. when Mrs. Jones parked her car in the post office parking lot. She left her car and walked up the (west) sidewalk leading from the parking lot to the entrance of the post office. When Mrs. Jones stepped from the sidewalk onto the rain-wet porch, she lost her footing and fell to the porch, landing in a sitting position. It was in this manner and on this occasion that Mrs. Jones received the injury to her back.[1]

Mrs. Jones testified that on the day of the accident, she was wearing a pair of shoes, commonly called "flats," with leather soles and heels. She stated that she was walking faster than normal in order to escape the rain, but that she

1. Mrs. Jones left the post office on her own accord and returned home. Her husband took her to the hospital where she was treated and x-rayed. Several months later an operation was required to correct the injury, from which she is still recovering.

noticed the porch was wet and tried to take ordinary precautions when she stepped onto the porch. Mrs. Jones said that she visited the post office almost daily, but that she had used the approach from the parking lot only three or four times previous to December 4, 1964, and never when the porch was wet; normally she would park in front of the building on Orange Street and use the south sidewalk.

There is no evidence that Mrs. Jones' fall was caused by an obstruction, such as debris, on the porch. Nor is there evidence in the record to support a finding that Mrs. Jones' carelessness or negligence contributed to her fall. She observed that the porch was wet but, after taking ordinary precautions, concluded that it was safe for her passage. As to her, the danger was not open and obvious, and it cannot be said that as a matter of law she did not act as a reasonably careful person would have acted in the same or similar circumstances. The only evidence in the record, clearly indicates that the accident was due to the unsafe condition of the rain-slick porch.

█ I find that Mrs. Jones was injured on December 10, 1964, that her injury occurred when she fell on the porch of the post office building in Angleton, Texas, and that the unsafe condition of the porch was the proximate cause of her fall.

On the date of Mrs. Jones' accident the post office building was owned by Maurice and Edith Cohen and leased to the United States.[2] Mrs. Jones filed suit against Mr. Cohen in the District Court of Brazoria County, Texas on December 30, 1965 to recover damages in the amount of $75,000. She alleged that the fall was due to the negligence of Cohen in failing to exercise ordinary care with respect to the construction, maintenance and precautionary measures of the porch area where she had fallen.[3] Mrs. Jones also filed suit against the United States in this court on November 17, 1966, alleging negligence on the part of the United States in allowing the building to attain the state of disrepair that was the cause of her injuries, and demanded judgment in the amount of $75,000. Cohen was unable to bring the United States into the state court suit because the federal courts have exclusive jurisdiction of civil actions instituted on this type of claim against the United States. 28 U.S.C. § 1346(b). Thus, on September 14, 1966, Cohen filed this action against the United States for indemnity or contribution in the event Cohen was found to be liable to Mrs. Jones.

Jones and Cohen undertook settlement negotiations, in which the United States elected not to participate.[4] On February 2, 1967, a contract of settlement was executed before trial by Jones and Cohen whereby Travelers Insurance Company, insurer of Cohen, agreed to pay Mrs. Jones the sum of $20,000 in full settlement of her claim. In return, Mrs. Jones assigned to Cohen all claims and causes of action growing out of the accident, including her claim against the United States.[5] Following the settlement, Mrs.

2. The United States was and is the only tenant in the building.

3. Cohen filed a plea of privilege to be sued in Bexar County, Texas, the county of his residence. A hearing was held and the trial court denied the plea of privilege. In so ruling, the trial court determined that Mrs. Jones had established by the preponderance of the evidence that Cohen was guilty of an act or omission of negligence and that such negligence was the proximate cause of the plaintiff's injuries. Vernon's Ann.Tex.Rev.Civ.Stat. Art. 1995, subd. 9a. See Southland Beauty Shops, Inc. v. Foreman, 319 S.W.

2d 737, 739 (Tex.Civ.App.1958) error dism.

4. The United States was invited to join the defense of the claim and to participate in settlement negotiations.

5. "FULL AND TOTAL ASSIGNMENT OF CLAIM

For and in consideration of the sum of Twenty Thousand and no/100 ($20,000.-00) dollars, receipt of which is hereby acknowledged and confessed, Violet Jones and husband, J. J. Jones, and their attorneys Brown, Kronzer, Abraham, Watkins & Steely do hereby assign to Maurice

Jones' suit against the United States was dismissed on motion of the Government, and Cohen pursued this action for contribution or indemnity. Travelers Insurance Company has been substituted as party plaintiff. The issue of damages has been severed, and trial was to the court on the issue of liability alone.

■■ Plaintiff's right to indemnity or contribution against the United States under the Federal Tort Claims Act is governed by the law of the State of Texas. United States v. Yellow Cab Co., 340 U.S. 543, 551, 71 S.Ct. 399, 95 L.Ed. 523 (1951). In order to be entitled to indemnity, plaintiff must prove that it discharged an obligation to Mrs. Jones for which the United States was prin-

cipally liable. In the framework of this case this means that it must prove that Mrs. Jones' injury (and plaintiff's liability therefor) resulted from a violation of a duty which the United States owed Cohen and that Cohen has violated no duty toward the United States.[6] Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609, 623, 23 A.L.R.2d 1114 (1951); Austin Road Co. v. Pope, 147 Tex. 430, 216 S.W.2d 563, 565 (1949). In order to be entitled to sue for and recover contribution, it must appear that plaintiff by paying a judgment has discharged a liability to Mrs. Jones which was shared by the United States, as joint tortfeasor, and in so doing has paid more than his fair share of the joint liability.

Cohen all claims and causes of action of any kind and character whatsoever arising from, growing out of or in anyway connected with the occurrence of December 10, 1964 described in more detail in the plaintiffs' original and amended petitions and controverting affidavits on file herein and vest in said Maurice Cohen and his representatives sole, exclusive right to further prosecute for his benefit any claims for damages for personal injuries as a result of the accident made the basis of this suit. It is understood and agreed by and between the parties that Maurice Cohen in making such payment does not admit liability, but on the contrary denies liability and makes such payment solely for the purpose of purchasing his peace and avoiding the risks, and uncertainty of litigation. Violet Jones and J. J. Jones, also as part of the settlement agreement do hereby assign to Maurice Cohen all claims and causes of action asserted by them in Civil Action No. 66-G-100 as well as the right to further prosecute said cause in the District Court of the United States for the Southern District of Texas—Galveston Division, styled Violet Jones vs. United States of America. Violet Jones states that it is presently her position that the allegations contained in Civil Action No. 66-G-100 are true and that there was negligence on the part of the United States Post Office Department proximately causing the injuries which she has received, but as part of the settlement consideration herein she is assigning and does now hereby assign to Maurice Cohen all claims and causes of action owned by her and asserted by her against the United States of America or any other person

as a result of the accident made the basis of this suit. Violet Jones and J. J. Jones also declare that the settlement reflected by this instrument is a good faith settlement in a reasonable amount of a disputed claim. Violet Jones and J. J. Jones also represent, assert and state that it is their intent, by this instrument, to relieve Maurice Cohen and all employees of Maurice Cohen of any, and all liability as a result of the accident made the basis of this suit and to vest in Maurice Cohen and his duly authorized representatives sole, exclusive authority to prosecute any further claims or causes of action arising from or connected with the accident made the basis of this suit.

Violet Jones, J. J. Jones and their attorneys also represent that they fully understand and have agreed and do agree that they will be paid no more money by any person, firm or corporation as a result of the injuries made the basis of this suit and said Twenty Thousand and no/100 ($20,000.00) dollars is accepted in full payment of all claims and causes of action asserted or which might be asserted as a result of the accident made the basis of this suit."

6. Hodges, Contribution and Indemnity Among Tortfeasors, 26 Texas L.Rev. 150, 162 (1947), put it in the following language:

*When there are two tortfeasors, either or both of whom are liable to an injured third person, but one of whom has breached a duty which he owed both to his co-tortfeasor and to the injured third person, then the tortfeasor who, to his co-tortfeasor, is blameless, should be allowed indemnity.*

Tex.Rev.Civ.Stat.Ann. art. 2212. See Callihan Interests, Inc. v. Duffield, 385 S.W.2d 568, 587 (Tex.Civ.App.1964) error ref. Thus, for indemnity plaintiff must show that—between it and the United States—the latter should bear the full responsibility for Mrs. Jones' injury, and for contribution plaintiff must show that the United States is a co-tortfeasor and jointly responsible.[7] There can be neither contribution nor indemnity unless the United States was liable to Mrs. Jones in damages. City of Houston v. Watson, 376 S.W.2d 23, 33 (Tex.Civ.App.1964) error ref. n. r. e.

■■■■ Was either Cohen or the United States liable to Mrs. Jones for the injury in question? Mrs. Jones was an invitee (customer) of the United States on the occasion of the accident. The general rule is that the owner and occupier of the building owe a duty to invitees to exercise ordinary care to keep the premises in a reasonably safe condition so that they will not be injured. Hall v. Medical Bldg. of Houston, 151 Tex. 425, 251 S.W.2d 497 (1952); Renfro Drug Co. v. Lewis, supra, noted in 30 Texas L.Rev. 131; Kallum v. Wheeler, 129 Tex. 74, 101 S.W.2d 225, 229 (Tex.Comm.App. 1937). Normally, this duty falls upon the occupier. The Texas Supreme Court has outlined his duties to be as follows:

> This includes a duty of the occupier to inspect and to discover dangerous conditions. His duty is to protect his invitees from dangers of which he, the occupier, knows, or (because of his duty to inspect) of which he *should* know in the exercise of ordinary care. If there are dangers which

are not open and obvious, he is under a *duty* to take such precautions as a reasonably prudent person would take to protect his invitees therefrom or to warn them thereof.

Halepeska v. Callihan Interests, Inc., 371 S.W.2d 368, 378 (Tex.1963) (citations omitted). See also Western Auto Supply Co. v. Campbell, 373 S.W.2d 735, 736 (Tex.1964). See generally Greenhill, Assumed Risk, 20 Sw.L.J. 1, 8–9 (1966). The lessor is not liable to the public or third persons for injuries resulting from a defective structure on the premises unless he has covenanted to maintain the premises in good repair; if he has so covenanted, a duty is owed and, if breached, liability is imposed. Harvey v. Seale, 362 S.W.2d 310, 312 (Tex.1962); Perez v. Reybaud, 76 Tex. 191, 13 S.W. 177, 7 L.R.A. 620 (1890).[8] This obligation was imposed upon Cohen by the terms of the lease he had entered into with the United States.[9] It provided:

> The Lessor shall, unless herein specified to the contrary maintain the demised premises, including the building and any and all equipment, fixtures, and appurtenances, whether severable or nonseverable, furnished by the Lessor under the lease in good repair and tenantable condition, except in case of damage arising from the act or the negligence of the Government's agent or employees. For the purpose of so maintaining said premises and property, the Lessor may at reasonable times enter and inspect the same and make any necessary repairs thereto.
>
> \* \* \* \* \* \*
>
> If any building or any part of it on the leased property becomes unfit for

7. Contribution is the payment by each tortfeasor of his proportionate share of the plaintiff's (injured party) damages, and where one tortfeasor has discharged the claim of the injured party, his right to receive the other tortfeasor's proportionate share. Indemnity shifts the entire loss from the tortfeasor who has been compelled to pay it to the shoulders of another who should bear it. Prosser, Torts §§ 47–48 (3d ed. 1964).

8. The lessor is not responsible for making repairs unless by agreement he obligates

himself to do so. See 35 Tex.Jur. 2d Landlord and Tenant § 82 (1962). But see note 38, infra.

9. The building was built by Floyd Harris, the original owner, and sold to Cohen in March of 1961. Cohen assumed the lease entered into between Harris and the Government, but renegotiated a new lease on February 28, 1964, to provide for a longer term of lease at a reduced rent.

use for the purposes leased, the lessor shall put the same in a satisfactory condition, as determined by the Post Office Department, for the purposes leased.

Thus, Cohen was under a duty to exercise ordinary care to keep the porch of the building in a reasonably safe condition for Mrs. Jones' use. Renfro Drug Co. v. Lewis, 235 S.W.2d at 618–619. Both Cohen and the United States owed a duty to Mrs. Jones and, therefore, she had a cause of action against either or both.

Having established that both Cohen and defendant owed a duty to Mrs. Jones, it is next incumbent upon plaintiff to show that a duty was breached which made Cohen, as lessor-owner, liable to Mrs. Jones. This plaintiff must do in order to demonstrate that it has discharged a liability which entitles it to proceed, on the merits, against the United States to recover all or part of the money paid in settlement of Mrs. Jones' claim. Did either Cohen, as owner-lessor, or the United States, as occupier-lessee, breach a duty owed Mrs. Jones?

█ The evidence before the court shows that neither the lessor nor the lessee had any prior notice of the specific danger encountered by Mrs. Jones. No one, to the knowledge of the parties, had slipped on the porch prior to Mrs. Jones; although both Cohen and defendant were aware that people had experienced difficulty with footing on the ramp in front of the entrance (about twenty feet from the point of Mrs. Jones' fall).[10] But Cohen and defendant's duty to an invitee did not require specific knowledge that the porch was slippery when wet; it extends also to dangers of which they *should* know in the exercise of ordinary care, because of their duty to inspect. Halepeska v. Callihan Interests, Inc., supra.

█ It is common knowledge that concrete with a "trowel" or smooth-surface finish, such as that on the porch of the post office, is slippery when wet. A reasonable inspection could or should have made the lessor and lessee aware that the porch would (and did) get wet when it rained, thereby bringing about the dangerous condition. I have previously concluded that Mrs. Jones did not know the danger was present, that the danger was not open and obvious, and that her negligence did not contribute to the fall and injury. Between Mrs. Jones and the owner and occupier of the building, the owner and occupier had superior knowledge of the condition of the premises and of the danger that was present. See 251 S.W.2d at 501. Under the circumstances of this case, a duty was imposed upon the United States and Cohen to use ordinary care to discover the defect, and to correct it or issue an appropriate warning in time to prevent the accident.

█ Irrespective of which party must ultimately bear the responsibility and liability, I find and conclude that the unsafe condition of the porch was caused by the failure of the lessor and/or the lessee to maintain the porch in a way either to provide sufficient traction and prevent slipping when it was wet or to warn Mrs. Jones of the impending danger. In failing to exercise the duty owed her, both were answerable to Mrs. Jones in damages for the injuries she sustained. Therefore, Cohen, as lessor with a duty to repair, was liable to Mrs. Jones in the suit brought against him and, by entering into a settlement, he discharged that liability. See for example Harvey v. Seale, supra; Renfro Drug Co. v. Lewis, supra.

The fulcrum of the case at hand is not the determination that both lessor and lessee were liable to Mrs. Jones, but who —lessor, lessee, or both—must ultimately shoulder the liability.[11]

The United States denies any liability for the injury suffered by Mrs. Jones, and argues that under the terms of the

10. Discussed in detail infra.

11. This is the issue which, in the end, must be resolved in a case of this nature. See Renfro Drug Co. v. Lewis, supra; Carlisle v. J. Weingarten, Inc., 137 Tex. 220, 152 S.W.2d 1073, 1075–1076 (1941).

lease Cohen was responsible for maintaining the building and for correcting any defects or safety hazards; that Cohen alone was negligent in discharging the duty owed Mrs. Jones; that it has not breached a duty owed Cohen or Mrs. Jones. Thus, under the Government's theory of the case, plaintiff is entitled to neither indemnity nor contribution. Plaintiff avers that the United States was in complete and total occupancy and control of the building; that defendant either initially had or later assumed the responsibility for correcting the dangerous condition on the porch; that it discovered the danger but neither notified Cohen as it had done in the past nor corrected the defect; that the danger was a defect in construction which the United States should have discovered before giving its approval of the building plans and that defendant failed to advise Cohen that the building construction was in any way inconsistent with Government safety regulations. Plaintiff, therefore, contends that the United States breached a duty it owed to Cohen and must indemnify plaintiff. In the alternative, plaintiff argues that the United States must contribute to the amount of the settlement.

Plaintiff's position that the United States assumed the responsibility of correcting the defect that caused Mrs. Jones' injury is based upon the following evidence.

Cohen resided in San Antonio, Texas at all times material to this case. He purchased the Angleton post office building as an investment, and he personally did not attend to the maintenance or operation of the building. All matters concerning the post office building were handled by his accountant, Julio Vasquez. Vasquez testified that he visited the Angleton post office about once a year, primarily for public relations purposes and to discern if the postmaster had any complaints. Vasquez stated that he understood that the post office had its own inspector, although he was never contacted by the inspector.

There appears to have been an understanding between Vasquez and the acting postmaster that if any major repairs were required the postmaster would write or call Vasquez, but that minor repairs would be handled by the postmaster, normally by a building custodian employed by the Government, without prior reference to Vasquez. The custom under the lease had been for the postmaster to notify Vasquez when it became necessary to hire someone or to purchase materials in order to make repairs, and Vasquez would authorize the expenditure on behalf of the lessor. The evidence shows that Vasquez authorized the postmaster to do whatever was necessary and that he never refused a request.

Prior to Mrs. Jones' fall it was discovered that patrons of the post office were having difficulty getting their footing on the ramp in front of the entrance (about twenty feet from where Mrs. Jones fell). On July 31, 1961, the acting postmaster, W. T. Rochelle, wrote Vasquez to report that the smooth concrete in front of the post office became very slick when it rained, and that a child had slipped and almost been injured. He suggested that some preventative measures be taken, such as having the concrete "roughed." Sometime prior to February 1, 1962, Rochelle called Vasquez to inform him of the problem in front of the entrance. Rochelle said that he had been informed there was a type of paint that could be applied to the ramp to prevent slipping. Vasquez authorized him to order the paint, and subsequently received and paid a bill for the non-skid compound that had been ordered by Rochelle. It was apparent immediately that the paint had not corrected the problem. The parties then agreed to have the area scoured in order to give the ramp a rough surface. Rochelle employed the labor, and Vasquez paid the bill. The second method was unavailing, and on February 15, 1962 Vasquez received a letter from Rochelle reading, in part, as follows:

I told you over the 'phone the other day that I thought I had that slick con-

crete in front of the building licked but much to my chagrin I find that I was mistaken. The Inspector was in here yesterday and said that he thought I should get a "Safety Walk" material like they are using in front of other Post Offices. I am enclosing some literature on this material and if you can locate it in San Antonio, would appreciate your mailing us a piece size 6' 6" x 5' 7" and I will get some one to install it.

Vasquez purchased the requested material, forwarded it to Rochelle, and subsequently it was installed by a person hired by a post office employee.[12] Vasquez testified that he gave no details as to how or where the material was to be installed, and that he never was asked to inspect the ramp or supervise the installation of the material; the details were handled by the postmaster the same as other minor repairs. On March 26, 1962, Rochelle informed Vasquez that the non-skid paper had been installed and that it was working fine. Vasquez had the opportunity to inspect the ramp after the material had been applied, and said that it appeared safe.

A new postmaster, T. H. Journeay, assumed charge of the Angleton post office in June of 1962. He testified that he understood that the lessor was responsible for correcting defects that might be safety hazards. Vasquez stated, however, that Journeay never complained about the condition of the porch, and that he had never received a complaint concerning the area of the porch where Mrs. Jones fell. Both the postmasters, Rochelle and Journeay, testified that prior to Mrs. Jones' accident, they had no knowledge of anyone slipping or falling on the porch.

On October 21, 1964, U.S. Postal Inspector, L. T. Swilley, inspected the Angleton post office building and premises. His report indicates that he found the building and grounds free of any con-

dition that constituted an immediate safety hazard. Swilley testified that he did not inspect the porch to determine if it would be slippery when wet, nor did he advise the postmaster to have non-skid paper applied to the area where Mrs. Jones fell. He stated that he found the building to be in good repair and tenantable condition.

It is important to ascertain first if the plaintiff is entitled to indemnity, for if there exists a right to indemnity there can be no suit for contribution. See Houston Belt & Terminal Ry. Co. v. J. Weingarten, Inc., 421 S.W.2d 431 (Tex. Civ.App.1967), and cases cited therein.

█ Plaintiff argues that the United States was under a duty to discover the danger on the porch and to correct the danger or notify Cohen so that he could fulfill his obligation to repair. Defendant, plaintiff contends, had always notified Cohen when the building needed repairing or a defect needed correcting, and that he was entitled to rely upon defendant to discharge this duty. Thus, it is plaintiff's position that because the United States breached the duty owed Cohen, Mrs. Jones was injured, she sued Cohen, and plaintiff was forced to pay a sum of money to her to discharge defendant's liability. Under the terms of the lease, however, Cohen owed a duty to the United States to maintain the premises in good repair. This was not done, and it cannot be said that Cohen did not breach a duty owed the United States and that plaintiff is entitled to full recovery over against defendant by way of indemnity. It is clear in this case, and I so find, that plaintiff is not entitled to indemnity against the United States. See Renfro Drug Co. v. Lewis, supra; Humble Oil & Ref. Co. v. Martin, 148 Tex. 175, 222 S.W.2d 995, 1002; Dallas Ry. & Terminal Co. v. Harmon, 200 S.W.2d 854 (Tex.Civ.App.1947) error ref. See also Brown & Root, Inc. v. United States, 198 F.2d 138, 141 (5th Cir. 1952).

---

12. Rochelle testified that Vasquez had furnished more non-skid paper than required for the ramp job. The extra paper had been stored in the building and was later used to replace worn paper in front of the entrance.

Now, turning to plaintiff's right to contribution, the United States contends not only that Cohen alone was responsible for Mrs. Jones' injury, but that any right to contribution was extinguished when plaintiff entered into a settlement with Mrs. Jones prior to judgment. Thus, plaintiff's right to sue for contribution presents a potential obstacle to recovery irrespective of the Government's liability as a joint tortfeasor.

The common law in most states proscribes contribution between joint tortfeasors although one of them has discharged fully the claim of the injured plaintiff. Prosser, Torts § 47, at 273 (3d ed. 1964); 18 Am.Jur.2d Contribution § 33 (1965).[13] Underlying this rule is the policy that the courts should not assist one wrongdoer in recovering against another wrongdoer.[14] However, statutes have been enacted in a number of states to allow contribution in a variety of circumstances, because, in the words of Prosser:

> There is obvious lack of sense and justice in a rule which permits the entire burden of a loss, for which two defendants were equally, unintentionally responsible, to be shouldered onto one alone, according to the accident of a successful levy of execution, the existence of liability insurance, the plaintiff's whim or spite, or his collusion with the other wrongdoer, while the latter goes scot free.

Op cit. supra, at 275.[15]

■ Texas, in 1917, was one of the first to create a statutory exception to the common law rule.[16] Tex.Rev.Civ. Stat.Ann. art. 2212. Article 2212 provides as follows:

> Any person against whom, with one or more others, a judgment is rendered in any suit on an action arising out of, or based on tort, except in causes wherein the right of contribution or of indemnity, or of recovery, over, by and between the defendants is given by statute or exists under the common law, shall, upon payment of said judgment, have a right of action against his co-defendant or co-defendants and may recover from each a sum equal to the proportion of all of the defendants named in said judgment rendered to the whole amount of said judgment. If any of said persons co-defendant be insolvent, then recovery may be had in proportion as such defendant or defendants are not insolvent; and the right of recovery over against such insolvent defendant or defendants in judgment shall exist in favor of each defendant in judgment in proportion as he has been caused to pay by reason of such insolvency.

Since there is no common law right to contribution in Texas,[17] if plaintiff is entitled to contribution at all it must be pursuant to article 2212. It is important, therefore, to understand the conditions and limitations placed upon the right to contribution in article 2212.

In those states that have contribution statutes, two approaches—or philosophies—have developed respecting their construction. The courts in some states have applied a strict interpretation of the statutory language, reasoning that the legislature intended to abrogate the

13. The right to contribution among tortfeasors at common law is surveyed in Annot., 60 A.L.R.2d 1366 (1958).

14. See Best v. Yerkes, 247 Iowa 800, 77 N.W.2d 23, 27–29, 60 A.L.R.2d 1354 (Iowa 1956); Davis v. Broad Street Garage, 191 Tenn. 320, 232 S.W.2d 355 (Tenn.1950); Wheeler v. Glazer, 137 Tex. 341, 153 S.W.2d 449, 451, 140 A.L.R. 1301 (1941). See generally 18 Am.Jur. 2d Contribution § 34, at 46; Jones, Contribution Among Tortfeasors, 11 U.Fla. L.Rev. 175 (1958).

15. See also Hodges, Contribution and Indemnity Among Tortfeasors, 26 Texas L. Rev. 150, 166 (1947).

16. Article 2212 is analyzed and discussed in Hodges, supra, and Comment, 44 Texas L.Rev. 326 (1965).

17. Oats v. Dublin Nat'l Bank, 127 Tex. 2, 90 S.W.2d 824, 829 (Tex.Comm.App. 1936).

common law rule (prohibiting contribution) only to the extent expressly stated in the statute, thereby requiring the party seeking contribution to trace the precise language of the statute. See, for example, Buckner v. Foster, 105 F.Supp. 279, 281 (E.D.Mich.1952). A more liberal interpretation of contribution statutes has developed in other states, where the controlling purpose of the legislature in passing the statute has been construed as creating the right to contribution. In these states the statutory requirements are deemed to be procedural only. See generally 18 Am.Jur.2d Contribution § 42, at 63; Annot., 85 A.L.R. 1091 (1933).

Literally construed, article 2212 would require a joint judgment as a predicate to seeking contribution. But Texas, unlike most of its sister states with substantially identical statutory language,[18] does not require a joint judgment.

[T]he cases have extended the doctrine beyond the words of the statute. If the plaintiff sues only one defendant, such defendant may implead the others. The Texas Supreme Court has gone further, and stated that the second defendant need not be a party to the original suit. The defendant who is held in judgment there may, *in a*

*separate action,* pursue and recover contribution from his joint wrongdoer.

Brown & Root, Inc. v. United States, 92 F.Supp. 257, 264 (S.D.Tex.1950), aff'd, 198 F.2d 138 (5th Cir. 1952) (citations omitted). There can be no doubt, however, that the statute requires that a judgment of some sort, upon which payment is made, be rendered against the person seeking contribution. The key to this case lies in the meaning of the word "judgment."

At the time Brown & Root, Inc. v. United States was decided in 1950, no Texas court had undertaken to define judgment within the context of article 2212. The court, refusing to construe article 2212 any more liberally than the Texas courts, concluded that the statute required that a judgment be entered at the conclusion of a trial on the issues of liability and damages. Thus, the court held that a consent decree entered upon a voluntary settlement did not satisfy the statute and did not entitle the original defendant, Brown & Root, to sue for contribution; a judgment within the meaning of the statute had not been rendered. The Fifth Circuit affirmed.[19]

Then came Callihan Interests, Inc. v. Duffield, 385 S.W.2d 586 (Tex.Civ.App. 1964) error ref.[20] In *Callihan,* a group

---

18. See Keeton, Contribution and Indemnity Among Tortfeasors, 27 Ins.Coun.J. 630, 633 (1960). For example: California, Calif.Civ.P.Ann. tit. 11, § 875(a) (1959), Thornton v. Luce, 209 Cal.App.2d 542, 26 Calif.Repts. 393 (1962); Michigan, Mich.Stat.Ann. § 27.1683(1) (1942), C.L. Mich.1948, § 691.561, Buckner v. Foster, 105 F.Supp. 279, 281 (S.D.Mich.1952); New York, N.Y.Civ.P.Law & Rules, Art. 14, § 1401 (1963), Greyhound Corp. v. General Accident Fire and Life Assurance Corp., 14 N.Y.2d 380, 251 N.Y.S.2d 758, 200 N.E.2d 625 (Ct.App.1964); New Jersey, N.J.Stat.Ann. art. 2A:53A-3 (1952), Nilson v. Moskal, 70 N.J.Super. 389, 175 A.2d 504 (1961); West Virginia, W.Va.Code § 55-7-13 (1966).

19. The Fifth Circuit concluded:
The statute creates a right of contribution in favor of a party only when he has paid a judgment rendered against him and makes no provision for con-

tribution in cases where a cause of action is settled without contest as to liability. While the Legislature might have made provision for contribution in such situations, none was made.
198 F.2d at 142.
The Uniform Contribution Among Tortfeasors Act § 1(a), which has not been adopted in Texas, does provide for settlement: "Where two or more persons become jointly or severally liable in tort for the same injury to person or property or for the same wrongful death, there is a right to contribution among them even though judgment has not been recovered against all or any of them." Section 1(d) of the act, however, further requires that settlement extinguish the alleged tortfeasor's liability and that the amount paid in settlement must be reasonable.

20. Recent Decision. 19 Sw.L.J. 425 (1965).

of landowners had brought suit against Callihan Interests, Inc. for damages to their land alleged to have been caused by Callihan's disposal of salt water in connection with its oil production operations. Callihan impleaded Bridwell, Fulwiler, and Duffield for contribution or indemnity. Duffield filed a plea of privilege to be sued in another county and, by agreement, Callihan's third-party action against Duffield was transferred.[21] Subsequently, all the parties except Duffield agreed to a judgment awarding $18,500 to plaintiff against Callihan, a small part of which Bridwell and Fulwiler agreed to contribute. Callihan, Bridwell, and Fulwiler paid the judgment in accordance with its provisions.[22] Callihan then pursued his action against Duffield for contribution or indemnity. Duffield filed a motion for summary judgment and contended that Callihan was not entitled to contribution under article 2212 because the judgment under which Callihan paid the landowners was an agreed judgment, and not one judicially determined at the conclusion of a trial. The trial court granted Duffield's motion for summary judgment.

The court of civil appeals reversed the trial court and held that Callihan should have been permitted to offer proof

21. Here, as in *Callihan*, it was impossible to bring the alleged tortfeasor into the suit. In the case at hand this was due to the fact that contribution had to be sought under the Federal Tort Claims Act.

22. "JUDGMENT

On this the 13 day of August, 1963, came on to be considered the above entitled and numbered cause. The original plaintiffs appeared by and through their attorney of record, Charles R. Griggs; the original defendant and third party plaintiff, Callihan Interests, Inc., appeared by and through their attorney, Marvin S. Sprain; third party defendant, Bridwell Oil Company, appeared by and through its attorney, Henry Doscher; and third party defendant, W. J. Fulwiler, Jr., appeared by and through his attorney, Howard Barker.

It appearing to the Court that a stipulation and agreement for judgment having heretofore been agreed upon by and between the parties, in accordance with a motion duly presented to this Court, the Court is of the opinion that judgment should be entered in accordance with said motion and stipulation.

ACCORDINGLY, it is ORDERED, ADJUDGED AND DECREED that the original plaintiffs, Mrs. Nannie Box, a feme sole; Mrs. Myrtle Robinson, joined by her husband, Fred Robinson; Mrs. Jessie Hershey, joined by her husband, Arnold Hershey; Mrs. Ora Griffith, joined by her husband, Roy Griffith; Mrs. Lillie Caton. joined by her husband, W. B. Caton; Leslie H. Box; and Loring Box, do have and recover of and from Callihan Interests, Inc., the sum of $18,500.00.

It is further ORDERED, ADJUDGED AND DECREED that third party plaintiff, Callihan Interests, Inc., do have and recover of and from Bridwell Oil Company, in connection with its action over against it, the sum of $800.00 as contribution; that third party plaintiff, Callihan Interests, Inc., do have and recover of and from W. J. Fulwiler, Jr., the sum of $800.00 as contribution.

It appearing that the sum of $18,500.00 having been paid to the plaintiffs herein contemporaneously with the entry of this judgment, and that the contributions from third party defendants, W. J. Fulwiler, Jr. and Bridwell Oil Company, have been paid to third party plaintiff, Callihan Interests, Inc.:

It is ORDERED, ADJUDGED AND DECREED that no execution shall be had on this judgment; that the same is fully paid and released as to all parties except Carl E. Duffield, Jr., doing business as Duffield Oil Company.

It is further ORDERED, ADJUDGED AND DECREED that the entry of this judgment shall in nowise release or discharge Carl E. Duffield, Jr., doing business as Duffield Oil Company, in connection with the cause of action asserted against him by the original defendant and third party plaintiff, Callihan Interests, Inc.; that insofar as the cause of action asserted by Callihan Interests, Inc., against Carl E. Duffield, Jr., doing business as Duffield Oil Company, is concerned, same shall remain on the docket of this court, subject to further orders and proceedings by this Court.

It is further ORDERED, ADJUDGED AND DECREED that costs herein shall be assessed in the following ratio:

Callihan Interests, Inc.     169/185
Bridwell Oil Company     8/185
W. J. Fulwiler, Jr.     8/185
SIGNED AND ENTERED this 13 day of August, 1963."

that it was entitled to contribution under article 2212. In so holding, the court stated:

> The trial court, supported by the decision in Brown & Root, Inc. v. United States, 5 Cir., 198 F.2d 138, apparently held that Callihan could not maintain the suit because it was based upon an agreed judgment and not upon a judgment arrived at by judicial determination at the conclusion of a trial. We think this is not in accord with the interpretation of the statute by the Texas Courts which is to the effect that the purpose of the statute was to create a cause of action for contribution and not to prescribe the procedure by which it is to be obtained. The statute created a cause of action for the benefit of one tort-feasor who, by paying a judgment, discharged the liability of his joint tort-feasor. To hold that Callihan lost its right to contribution because it agreed to the judgment, under circumstances where it was impossible for it to have the liability of Duffield determined, would be contrary to the policy of the law to encourage settlement of cases. Callihan's asserted cause of action against Duffield is not based strictly upon the judgment, which did not bind Duffield, but upon the fact that Callihan by paying the judgment against it discharged more than its just share of its and Duffield's alleged joint liability to Box. By the literal interpretation of Article 2212 the right to contribution is granted to one joint tort-feasor against another only when a plaintiff has recovered judgment jointly against both and one has paid the judgment. Notwithstanding its limited terms, our courts have held that the purpose of the statute was to place the burden equally upon joint tort-feasors; that it was enacted to prevent inequities between joint tort-feasors; that a defendant tort-feasor may bring in other wrongdoers not sued by the plaintiff; that a joint judgment against tort-feasors is not required as a prerequisite to recovery of contribution by one against another and that the "dominant purpose" of Article 2212 is to "create the right of contribution." We think it was the purpose of the Legislature to create a cause of action for the benefit of one tort-feasor who by paying a judgment discharges more than his just share of the joint liability of himself and another joint tort-feasor to the injured party.

385 S.W.2d at 587. (Citations omitted.)

*Callihan* teaches that the dominant purpose of article 2212 is to create a right to contribution, rather than prescribing a ritual which must be followed before the right will accrue.[23] *Callihan* also pronounces that, for purposes of article 2212, an agreed judgment satisfies the requirements of the statute; a trial of the issues is not a prerequisite.[24] But

---

23. See also footnote 80 and accompanying text in Hodges, supra Note 6.
   Hodges, supra, at 168, concluded that contribution could be asserted by one who had paid an injured party and secured a release without action or judgment. The Texas cases cited by the author in support of his conclusion, however, did not so hold and were easily dismissed in Brown & Root, 92 F.Supp. at 264.

24. The Government cites Lower Neches Valley Authority v. City of Beaumont, 392 S.W.2d 733 (Tex.Civ.App.1965) error ref. n. r. e., as authority for its position that a settlement prior to judgment (i. e. a legal determination) does not satisfy article 2212.

In that case, LNVA entered into a voluntary settlement with the original plaintiffs and then sought contribution against other parties in the case who it alleged were joint tortfeasors. The court denied plaintiff the right to sue for contribution based upon the reasoning in Brown & Root, Inc. v. United States, supra. Later *Callihan* was decided and the court reconsidered plaintiff's position on motion for rehearing. The court adhered to its original decision, and distinguished *Callihan* on the following grounds: (1) Payment in *Callihan* was made under the judgment, whereas the LNVA judgment negated this possibility; it read: "that the plaintiffs herein, and each of them shall have and recover nothing * * *.";

28

can this reasoning safely be extended to a case where the alleged "judgment" upon which a suit for contribution is based was merely an agreed order of dismissal with prejudice which recited that a settlement had been reached whereunder defendant had agreed to pay plaintiff $20,000 in return for an assignment of all of plaintiff's rights against the United States, a finding by the trial judge that the settlement was a reasonable settlement of a disputed claim made in good faith, and whereby costs were assessed against the defendant? The following analysis supplies the answer.

■ A judgment is the law's last word in a judicial controversy; it is the final consideration and determination of a court of competent jurisdiction upon the matters submitted to it in an action or proceeding.[25] Thus, a judgment of dismissal with prejudice is a final judgment of the court.[26]

■ An agreed judgment or consent judgment is a judgment entered on agreement of the parties.[27] It is nothing technical, but merely an agreement of the parties which receives the sanction of the court.[28] It is a contract between the parties to the agreement, operates as an adjudication between them and, when the court gives the agreement its sanction, becomes a judgment of the court.[29] The fact that the judgment is by consent gives it neither greater nor less force than if rendered after protracted litiga-

(2) The settlement in *Callihan* satisfied the liability of all persons, whereas the covenant not to sue in *LNVA* did not attempt to discharge the liability of the City of Beaumont; (3) In *Callihan* the alleged tortfeasor (Duffield) was not before the court, whereas it was in *LNVA*; (4) *LNVA* made no showing that it had paid more than its fair share of the damages, and did not admit liability.

By refusing error, no reversible error, the Texas Supreme Court said that it agreed with the lower court's result but not necessarily with its reasoning. See Kellner v. Texas Osage Co-Op. Royalty Pool, Inc., 383 S.W.2d 578 (Tex.Civ.App. 1964). Thus, the Texas Supreme Court probably agreed with the result reached on the basis of some but not all of the reasons given in support thereof. The fact that the settlement did not discharge the city's liability, if any, was reason alone for denying LNVA the right to sue for contribution. Bonney v. San Antonio Transit Co., 160 Tex. 11, 325 S.W.2d 117, 120 (1959). *Callihan* teaches this much. *Callihan* is the controlling Texas authority on the point of contribution before this court. The Texas Supreme Court refused outright the application for writ of error, which means that it not only found the lower court's holding to be correct, but that the principles of law declared in the opinion were correctly determined. Brannon v. Pacific Employers Ins. Co., 148 Tex. 289, 224 S.W.2d 466, 470 (1949). The supreme court adopted the opinion of the court of civil appeals as its own. Myers v. Gulf Coast Minerals Management Corp., 361 S.W.2d 193, 196 (Tex.1962).

25. Ft. Worth Acid Works Co. v. City of Ft. Worth, 248 S.W. 822 (Tex.Civ.App. 1923), aff'd, 259 S.W. 919 (Tex.Comm. App.1924). A judgment has component parts: "The judgment of a court is what the court pronounces. Its rendition is the judicial act by which the court settles and declares the decision of the law upon the matters at issue. Its entry is the ministerial act by which an enduring evidence of the judicial act is afforded." Coleman v. Zapp, 105 Tex. 491, 151 S.W. 1040, 1041 (1912).

26. For example, a judgment of dismissal with prejudice is a final judgment of the court. First Nat'l Bank of Houston v. Fox, 121 Tex. 7, 39 S.W.2d 1085, 1086 (1931); Davis v. Thomas, 5 Tex. 389 (1849); State Bank & Trust Co. of San Antonio v. Love, 57 S.W.2d 924, 925 (Tex.Civ.App.1933). See also United States v. Yellow Cab Co., 340 U.S. 543, 545, 71 S.Ct. 399, 95 L.Ed. 523 (1951).

27. Burnaman v. Heaton, 150 Tex. 333, 240 S.W.2d 288, 291 (1951); Plumly v. Plumly, 210 S.W.2d 177, 179 (Tex.Civ.App. 1948) error dism.

28. Erstling v. Southern Bell Telephone & Telegraph Co., 255 F.2d 93, 95 (5th Cir. 1958); The Ansaldo San Giorgio I, 73 F.2d 40, 41 (2d Cir. 1934).

29. Wagner v. Warnasch, 156 Tex. 334, 295 S.W.2d 890, 893 (1956); Turman v. Turman, 123 Tex. 1, 64 S.W.2d 137 (Tex. Comm.App.1933), Burnaman v. Heaton, supra.

tion, except to the extent that it excuses error and operates to end all controversy between the parties. Pollard v. Steffens, 161 Tex. 594, 343 S.W.2d 234, 239 (1961); Tyner v. City of Port Arthur, 115 Tex. 310, 280 S.W. 523 (Tex.Comm. App.1926). See also Rector v. Suncrest Lumber Co., 52 F.2d 946, 948 (4th Cir. 1931). It has the same weight and effect as any other judgment and, unless vacated or set aside, stands as a final determination of the rights of the parties. Beam v. Southwestern Bell Telephone, 164 S.W.2d 412, 415 (Tex.Civ.App. 1942) error ref. w. o. m.; Peterman v. Peterman, 55 S.W.2d 1108, 1110 (Tex. Civ.App.1933).

■■ A dismissal with prejudice which arises out of and is based upon the agreement of the parties is an adjudication of the matters contemplated in the agreement, and these matters are as fully settled as if a final judgment had affirmatively disposed of them. Stephenson v. Gaines, 291 S.W. 602 (Tex.Civ. App.), rev'd on other grounds, 298 S.W. 401 (Tex.Comm.App.1927). The judgment acts as a bar to further proceedings. Owens v. Peeples, 391 S.W.2d 493 (Tex. Civ.App.1965); Rosenthal v. Groves, 387 S.W.2d 920 (Tex.Civ.App.1965).

■■ In Texas, therefore, a judgment is commonly understood to encompass an agreed or consent judgment, including as well an agreed judgment of dismissal with prejudice. The policy behind the law is to encourage settlement and discourage litigation. Bartlett Oil Mill Co. v. Cappes, 54 Tex.Civ.App. 354, 117 S.W.

485, 486 (Tex.Civ.App.1909); 12 Tex. Jur.2d Compromise and Settlement § 2, at 287 (1960). The policy and the law apply with equal force and logic to agreements that become judgments within the meaning of article 2212. Callihan Interests, Inc. v. Duffield, supra, 385 S.W. 2d at 587.

Was the agreed judgment approved in *Callihan* as a judgment which satisfied article 2212 any more of a judgment for that purpose than the agreed judgment of dismissal with prejudice entered in Jones v. Cohen? The elements of the judgment before the court in *Callihan* were: (1) the trial court entered judgment in accordance with motion for agreed judgment and upon stipulation and agreement of the parties; (2) accordingly, it was ordered, adjudged and decreed that the original plaintiffs would have and recover the sum of $18,500 from Callihan Interests, and that Callihan Interests would recover an agreed amount of contribution from the third party defendants; (3) the judgment said, "It appearing that the sum of $18,500 having been paid * * * contemporaneously with the entry of this judgment, and that the contributions from third party defendants * * *. It is ORDERED, ADJUDGED AND DECREED that no execution shall be had on this judgment; that the same is fully paid and released as to all parties except * * *" Duffield; (4) costs were assessed against the defendant and third party defendants.[30]

Although the Jones-Cohen order of dismissal [31] differs in form from the judg-

---

30. See note 22, supra.

31. ORDER OF DISMISSAL AND FINDING OF FACT CONCERNING SETTLEMENT

Be it remembered that on the 2 day of February, 1967, all parties appeared herein through their attorneys of record and announced in open court that a settlement had been reached by the terms of which Maurice Cohen is paying to Violet Jones and husband the sum total of Twenty Thousand and no/100 ($20,-000.00) dollars and is receiving in return therefor an assignment from Violet

Jones and husband of all rights which they may have against the United States government arising from and growing out of the accident made the basis of this suit. The court having previously reviewed the facts and the law applicable to this case in connection with the hearing on the Plea of Privilege determines and finds as a fact that this settlement is a reasonable settlement of a disputed claim made in good faith by the parties. It is therefore

Ordered, Adjudged and Decreed that the above styled cause is dismissed with prejudice. Costs are assessed against

ment entered in the Callihan situation, the result accomplished was the same. The order of dismissal was entered upon the settlement agreement of the parties. Although the order of dismissal did not order, adjudge and decree that Mrs. Jones would recover $20,000 from Cohen, did not recite that payment was being made contemporaneously with entry of judgment, and did not state that the judgment had been fully paid and released all parties except the United States, it became a binding contract disposing of the claim Mrs. Jones had against Cohen and the United States. And it became a final judgment, upon entry of which there was an adjudication by the court of the matters contemplated in the agreement and a bar to further proceedings. The inclusion of additional words in the judgment would not have made the settlement any more binding or enforceable. Under the circumstances, technical words of judgment would have been surplusage.

The statute says that the right of contribution arises "upon payment of said judgment." There is no evidence before the court as to the precise date that plaintiff made payment to Mrs. Jones. Strictly construed, it could be said that the statute requires that the money be paid simultaneously with or subsequent to the entry of judgment, and that any payment made upon an agreement of settlement is made under the terms of the settlement rather than upon payment of the judgment and pursuant to the order of the court. However, such a construction would be inconsistent with the holding in *Callihan*.[32]

The apparent purpose for requiring the rendition of judgment in the suit and that payment be made upon the judgment is to assure that the settling tort-feasor is under a legal compulsion to pay the original plaintiff and that the judgment extinguishes the original plaintiff's claim against the alleged joint tortfeasor. But under article 2212, legal compulsion does not require that the court judicially determine that the settling party was legally responsible for the injury suffered by the original plaintiff. *Callihan* settles this point. What the statute does require is that the agreement receive the sanction of the court and that a judgment be entered finally disposing of the original plaintiff's cause of action against the defendant and the alleged joint tortfeasor.[33] A dismissal of the plaintiff's cause of action with prejudice upon a settlement agreement of the parties accomplishes this result.

■ I find and conclude that the agreed order of dismissal with prejudice entered upon the settlement between Jones and Cohen satisfies the requirements of article 2212 and entitles plaintiff to sue the United States for contribution.[34] Several principles of Texas law

---

defendant Maurice Cohen, for which let execution issue in event same are not seasonably paid.

32. See also Glenn v. Nelis, 400 S.W.2d 395, 397 (Tex.Civ.App.1966), where the agreement was made two years prior to judgment.

33. The court will require that the agreement be in writing pursuant to Texas Rules of Civil Procedure, rule 11, and that all the parties to the agreement consent to the agreement and to the entry of judgment. Burnaman v. Heaton, supra.

34. Although without direct case authority, in 1947 Professor Hodges was moved to say prospectively (although his tone is absolute): "The courts have wisely treated this as [sic] rule of substantive law only and have allowed the right to be en-

forced in any fashion which will best fill the substantive aim of the statute and in the spirit of flexibility generally followed in procedural matters of this nature." 26 Texas L.Rev. at 173. See also Recent Decision, 19 Sw.L.J. 425, 426 (1965). Compare Eberle v. Sinclair Prairie Oil Co., 120 F.2d 746, 748–749, 135 A.L.R. 1494 (10th Cir. 1941).

If, in an appropriate case, the insurer could not settle the full claim asserted by the plaintiff against the insured and reserve the right to seek contribution against a joint tortfeasor, it would be faced with a dilemma in Texas (duty to protect insured to amount of policy limits). See Note, 18 Sw.L.J. 157 (1964). See also R. Keeton, Liability Insurance and Responsibility for Settlement, 67 Harv.L. Rev. 1136 (1954).

have influenced this determination. First, *Callihan* teaches that article 2212 does not require the entry of judgment after the merits of the plaintiff's case have been litigated. Second, a dismissal with prejudice is a "judgment." Third, compromise and settlement of legal controversies is to be encouraged, and judgments which are entered upon such agreements stand as a final determination of the rights of the parties and act as a bar to further proceedings by the plaintiff. And finally, the dominant purpose of article 2212 as stated in *Callihan* is to make it possible for a person in an appropriate situation to receive contribution, in order to distribute the burden equally between joint tortfeasors.

But article 2212 merely establishes the procedural requisites to sue for contribution; merely meeting these requirements does not entitle the plaintiff to contribution. In order to recover contribution, the plaintiff must prove that Cohen discharged a liability to Mrs. Jones, which was shared by the United States, as joint tortfeasor, and that Cohen paid more than his fair share of the joint liability. The judgment entered on the agreement of Jones and Cohen is not binding on the United States which was not a party to the agreement or judgment. Glasscock v. Hamilton, 62 Tex. 143, 151 (1884); Victor Ref. Co. v. City Nat'l Bank of Commerce, 263 S.W. 622, 624 (Tex.Civ.App.1924), aff'd, 115 Tex. 71, 274 S.W. 561 (1925). Thus, in a suit for contribution the alleged joint tortfeasor has the opportunity to raise the issue of common liability by claiming that (1) the plaintiff was under no legal obligation to pay the original plaintiff (no liability or defective judgment), (2) it was not liable to the original plaintiff; no joint tortfeasor and no liability to plaintiff, (3) that the agreed judgment did not discharge its liability to the original plaintiff, (4) that the agreed damages or the terms of the settlement were unreasonable. The burden is on the person suing for contribution. In this way the inequities that might otherwise attach are avoided, while at the same time the settling tortfeasor is able to maintain a suit for contribution.[35]

I previously have found that both the United States and Cohen owed a duty to Mrs. Jones and that this duty was breached. The issue now is whether the United States must share the liability incurred by Cohen and discharged by plaintiff.

The United States contends that because Cohen breached the duty to maintain the premises in good repair, he alone was liable for Mrs. Jones' injuries and, therefore, is not entitled to contribution. If this contention is correct, plaintiff would not be entitled to contribution from the United States because there would be no joint liability. Such, however, is not the case.

Cohen's liability under the lease was not absolute. There is no provision requiring the lessor to indemnify the lessee, and there is an implied right given the United States to make any repairs.[36] The United States was the sole occupant of the building and in a better position than Cohen to observe the condition of the porch when it became wet. The lessor lived a great distance from Angleton,

---

35. The argument against it [contribution based upon settlement] is that the other defendant may take no part in the settlement, violently oppose it, and regard it as outrageous, and still be held liable for his share. It is for this reason that the statutes of several jurisdictions limit contribution to those against whom judgments have been rendered, which fix both liability and amount. Where there is no such provision, it is almost invariably held that one who settles without judgment can recover contribution. It is usually held, however, that in the contribution suit such a compromiser must sustain the burden of proof, not only as to his own liability to the original plaintiff, but also as to the amount of the damages and the reasonableness of the settlement.
Prosser, Op.Cit. supra, at 217.

36. The lease provided: "The Government shall have the right to make alterations * * *."

a fact known to the United States when the lease was signed. Nonetheless, Cohen did agree to maintain the premises in good repair.

The lease imposed the duty upon Cohen to make repairs, but a working arrangement developed whereunder the postmaster would notify the lessor that money or materials were needed in order to make a repair or correct a defect. The lessor did not send anyone to inspect the premises for defects or needed repairs, but relied upon the postmaster to discover defects or disrepair and relay the information to Vasquez. The parties thereby modified, or perhaps established, the circumstances under which the lessor's duty to repair arose [37]—at least as to conditions known to the lessee but not the lessor.

■ The defect which caused Mrs. Jones to fall was a defect in construction. Cohen purchased the building after it had been constructed and after the United States had given its approval of the building plans. Although the evidence shows that neither Cohen nor defendant had actual knowledge of the danger on the porch, both possessed the common knowledge that there was a potential danger, the presence of which would or should have been revealed by a reasonable inspection. See Annot., 163 A.L.R. 300, 316 (1946). Taking into consideration all the evidence before the court,[38] the duty to discover and correct the defect rested equally upon the lessor and lessee; neither occupied a position with respect to Mrs. Jones or each other which allowed either to ignore the condition of the porch.[39]

■ I find and conclude that under the facts and circumstances of this case plaintiff paid a judgment, and discharged the liability to Mrs. Jones which was shared by Cohen and the United States as co-tortfeasors;[40] in so doing, plaintiff paid more than its fair share of the joint liability. Plaintiff, therefore, is entitled to receive contribution from the United States to the extent of defendant's liability so discharged. The dollar amount plaintiff is entitled to recover will be determined after trial on the issue of damages, but, subject to proof of damages (i. e. amount of liability discharged by plaintiff), I apportion the liability of Cohen and defendant equally.[41] The maximum amount plain-

---

37. Compare Harvey v. Seal, 362 S.W.2d 310, 312 (Tex.1962).

38. It may be, and often is, that the ultimate responsibility falls upon the architect or contractor. There is a principle of Texas law to the effect that if a member of the public or third person is injured due to a defect in construction that existed at the time the lease was entered into, the lessor is not liable to the injured person if he proves that the premises was constructed according to plans and specifications prepared by a competent and qualified architect and that the fault causing the injury was in the plan or construction of the building. In so doing, the owner's responsibility to provide for a safe construction is satisfied by his use of ordinary care to engage a competent architect and builder. See Crocker v. Clark-McDavitt Properties, Inc., 365 S. W.2d 21, 23 (Tex.Civ.App.1963) error

ref. n. r. e.; Hamblen v. Mohr, 171 S.W. 2d 168, 171, 173 (Tex.Civ.App.1943) error ref. w. o. m. However, no such proof has been offered in this case.

39. "The tort duty [of the lessor] arises from the lessor's ability to make repairs and his control over them * * *." Harvey v. Seale, 362 S.W.2d 310, 312 (Tex.1962).

40. Defendant alleges that plaintiff's complaint is faulty in that it fails to denominate Cohen a joint tortfeasor. To require such an admission would be to require plaintiff to renounce its claim for indemnity. The law does not require that this be done; the evidence speaks for itself.

41. This is the general rule in states which allow contribution. See United States Steel Corp. v. Emerson-Comstock Co., 141 F.Supp. 143, 148 (N.D.Ill.1956).

tiff can recover—exclusive of costs—is one-half the amount of the settlement, or $10,000.

The foregoing constitute the findings of fact and conclusions of law of this court on the severed issue of liability.

### ORDER

BE IT REMEMBERED what on the 1st day of May, 1968, came on for hearing, the severed issue of damages in the above styled and numbered cause, and the plaintiff adduced its evidence until it rested and defendant rested without the introduction of any evidence; and the Court, having heard such evidence and argument of counsel with respect to the issue of damages, having previously found that plaintiff is entitled to contribution from defendant, and being of the opinion that the settlement entered into between plaintiff and Mrs. J. J. (Violet) Jones and her attorneys in Cause No. 46,501 in the District Court of Brazoria County, Texas, styled Violet Jones, et vir, v. Maurice Cohen, was a reasonable one, it is accordingly;

ORDERED, ADJUDGED AND DECREED as follows: That the plaintiff, The Travelers Insurance Company, have and recover of and from the defendant, United States of America, the sum of TEN THOUSAND DOLLARS ($10,000), representing one-half the settlement previously paid by plaintiff in Violet Jones, et vir, v. Maurice Cohen, Cause No. 46,-501 in the District Court of Brazoria County, Texas; that plaintiff have and recover of and from defendant the additional sum of TWO HUNDRED TWENTY-EIGHT AND 47/100 DOLLARS ($228.47), which represents one-half of the court costs previously paid in full by plaintiff in the case of Violet Jones, et vir, v. Maurice Cohen, and that plaintiff have and recover its costs of court in this behalf expended.