Harold DARRYL et ux., Petitioners,

v.

FORD MOTOR COMPANY, Respondent.

No. B–1172.

Supreme Court of Texas.

April 23, 1969.

Rehearing Denied May 28, 1969.

Jack Hazlewood, Amarillo, for petitioners.

Gibson, Ochsner, Harlan, Kinney & Morris, Max R. Sherman, Amarillo, for respondent.

McGEE, Justice.

This is a suit for damages arising out of a rear-end collision filed by Petitioners Harold Darryl and wife, Anita Darryl, against Defendant John D. Voyles, alleging various counts of negligence, and against Respondent Ford Motor Company for negligence in equipping Voyles' truck with defective brakes, and in the alternative, strict liability in tort. The trial court entered judgment upon the verdict in favor of petitioners against Ford but denied recovery against Voyles and also denied recovery by Ford against Voyles for contribution or indemnity. Both Darryl and Ford failed to perfect their appeals as against Voyles. The Court of Civil Appeals at Amarillo affirmed the judgment of the trial court in favor of Voyles and reversed the judgment against Ford and rendered judgment that the petitioners take nothing. 432 S.W.2d 569.

Petitioners in this Court have abandoned their negligence theory and rely on strict liability in tort.

Writ of error was granted on petitioners' first point, which complains of the Court of Civil Appeals holding that there was no evidence to support the finding of the jury that the defective condition of the push rod existed at the time when it was sold by Ford Motor Company.

We hold that there was some evidence to support the submission of the following issues and to support the jury's answers thereto: 6a—that the push rod bent under pressure placed on the brake pedal by Voyles in an effort to stop the vehicle; 6b—that the bending of the push rod was a proximate cause of the collision; 6c—that the push rod bent because it was defective at the time it was sold by Ford Motor Company; 6d—that the defective condition of the push rod was a proximate cause of the collision in question; 7—that the bending of the push rod did not occur at the time of the impact of the vehicle in question; 8a—that Voyles' brakes failed suddenly and unexpectedly when he stepped on the brake pedal immediately before the collision; and 8b—that such failure was the sole proximate cause of the collision.

Defendant Voyles testified in substance as follows: He bought the new truck in June, 1965 from an authorized Ford dealer, Sid Stout. The collision occurred on August 27, 1965. At the time of the accident the mileage on the truck was only six or seven hundred miles. Until the harvest began on August 25, 1965 he drove only 80 to 100 miles. Most of the mileage had been placed on the truck during the seventy-two hours preceding the accident. From the date of purchase to the time of the accident he had no repairs made on the truck. The brakes had worked perfectly up until the accident.

In describing the accident, Voyles related that he entered Western Street at 45th Street, where he came to a complete stop. He proceeded north on Western Street for several blocks. He noticed the Darryl car slowing down, apparently to stop or to turn. When he put his foot on the brake it kind of "fluttered a little bit and then went free-wheeling into the back of the car." His application of the brakes did not slow him down at all. He said, "When I went to stop the truck, that is when I bent it." The truck left no skid marks. He was not sliding. The pavement was wet. He said he thought he would know whether he was sliding or stopping. The brake pedal went to the floorboard. He had no pedal; it offered no resistance at all. After the accident, he demonstrated to the officer that the pedal would go all the way to the floor with no suggestion of back pressure. The rear of the Darryl car was damaged badly. There was *no* damage to the truck—"not a scratch."

On the night of the accident the bent push rod was removed from Voyles' truck. The only repair made to his brakes was the replacement of the bent push rod. No brake fluid was added. No other repairs were made to the truck.

The next morning after the repair was made Voyles started hauling again and had no trouble with the brakes. He sold the truck about two months after the accident. No repairs were made to the brakes during the two-months period.

It was stipulated that after the accident the push rod was bent; that the braking system was inoperative at that time by reason of the bent push rod. It is undisputed that the bent push rod was too short to activate the braking mechanism on the truck.

The evidence conclusively shows that the push rod bent either when Voyles applied the brakes in order to avoid the collision or as a result of the collision. Cy Walker, the Quality Control Engineer for Ford, agreed.

In our opinion, petitioners made out a case of strict liability in tort. When it is shown that the braking system was defective (the push rod would bend upon application of pressure in the operation of the braking mechanism), we have a case similar to that of the sealed container, McKisson v. Sales Affiliates, Inc., 416 S.W.2d 787, 792 (Tex.Sup., 1967). "When it is shown that the product involved comes in a sealed container, it is inferable that the product reached the consumer without substantial change in the condition in which it was sold. See, e. g., Kroger Co. v. Bowman, 411 S.W.2d 339 (Ky., 1967); Shoshone Coca-Cola Bottling Company v. Dolinski, 82 Nev. 439, 420 P.2d 855 (Nev., 1966). It appears that nothing was done with the curling preparation which would change its properties or characteristics after it was delivered to Mrs. McKisson."

It cannot be seriously contended that a push rod that will bend to such an extent that it will not activate the braking system is not "unreasonably dangerous." McKisson v. Sales Affiliates, Inc., supra; Ford Motor Co. v. Mathis, 322 F.2d 267, 3 A.L.R.3d 1002 (5th Cir., 1963); MacPherson v. Buick Motors, 217 N.Y. 382, 111 N.E. 1050, L.R.A.1916F 696 (1916).

This Court in the McKisson case extended the strict liability doctrine to products other than foodstuffs. To exclude circumstantial evidence that the product was defective at the time of the sale would frustrate the beneficial purposes of the doctrine. It would be equally difficult, if not impossible, for the plaintiff to rebut by direct evidence all of the conceivable possibilities which would account for the defective condition other than the existence of the defect at the time of the sale. Such direct evidence should not be required, particularly when dealing with a latent defect.

Respondent relies heavily on Roach-Bissonet v. Puskar, 417 S.W.2d 262 (Tex.Sup., 1967). We think the cases are distinguishable on the facts. In that case plaintiff

sued for damages on the theory that his power brakes and power steering failed to work properly and were defective, causing the accident. But even if the power brakes and power steering did fail to work properly, the plaintiff would still have been able to steer and brake the car with the remaining conventional brakes and steering. A carburetor defect causing the engine to stall, if proved, would inactivate the power brakes and steering, but the conventional brakes and steering mechanism would still be available. Under this record, the malfunction of Voyles' brakes caused the accident. The bent push rod was too short to activate the braking system—manual or power. There is no other explanation in this record for the cause of the accident. It would be quibbling to make a distinction between malfunction and defect. The defect causes malfunction.

Respondent also relies upon Holley v. Central Auto Parts, 347 S.W.2d 341 (Tex. Civ.App., 1961, writ ref. n. r. e.). That case held that the implied warranty doctrine could not be extended to secondhand or used material.

■ Petitioners' second point is that the Court of Civil Appeals erred in its alternate holding that the finding of the jury that the push rod was defective at the time it was sold by Ford was so contrary to the great weight and preponderance of the evidence as to be manifestly wrong because that point was not properly before the court, and the Court of Civil Appeals had no jurisdiction to pass on it.

Nowhere in the amended motion for new trial did the respondent, Ford Motor Company, state that the evidence supporting the jury answers to any specific special issue was either insufficient or against the great weight of the credible evidence. See Rules 324 and 374, Tex.Rules of Civil Procedure.

We hold that the Court of Civil Appeals had no jurisdiction to consider the insufficient evidence points nor to determine any question as to the great weight and preponderance of the evidence. See Wisdom v. Smith, 146 Tex. 420, 209 S.W.2d 164 (1948); Wagner v. Foster, 161 Tex. 333, 341 S.W.2d 887 (1960); Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Tex.L.R. 362 (1960).

■ Assignments 8 and 9 in respondent's amended motion for new trial and point No. 1 in its brief in the Court of Civil Appeals raise this question: Under the doctrine of strict liability, is there a duty owed by the manufacturer, Ford Motor Company, to the Darryls, who are not users and not consumers of the product in question? We answer respondent's question in the affirmative.

The Restatement (Second) of Torts, § 402A, Comment o (1965) recognizes the distinction between applying the strict liability doctrine to users and consumers and to non-users and non-consumers. It expresses neither approval nor disapproval of the expansion of the rule to protect others.

■ We hold that recovery under the strict liability doctrine is not limited to users and consumers. Piercefield v. Remington Arms Company, 375 Mich. 85, 133 N.W. 2d 129 (1965); Mitchell v. Miller, 26 Conn. Sup. 142, 214 A.2d 694 (1965). There is no adequate rationale or theoretical explanation why non-users and non-consumers should be denied recovery against the manufacturer of a defective product. The reason for extending the strict liability doctrine to innocent bystanders is the desire to minimize risks of personal injury and/or property damage. A manufacturer who places in commerce a product rendered dangerous to life or limb by reason of some defect is strictly liable in tort to one who sustains injury because of the defective condition. Greenman v. Yuba Power Products, Inc., 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049 (1962); Mitchell v. Miller, *supra*.

Judgment of the Court of Civil Appeals affirming the judgment of the trial court that the Darryls and Ford take nothing

against Defendant Voyles is affirmed. Judgment of the Court of Civil Appeals reversing the trial court's judgment in favor of the Darryls against Ford is reversed and judgment of the trial court is affirmed.

HAMILTON, Justice (dissenting).

I respectfully dissent.

The case at bar is limited to an action against respondent Ford Motor Company on the doctrine of strict liability of a manufacturer for injury resulting from defective products.

The vital issue in this case is whether there is any evidence to support the jury's finding that the brake cylinder push rod bent under pressure placed on the brake pedal by Voyles in an attempt to stop his vehicle. If this fact can be determined, the jury could reasonably decide, as it did, that the push rod was defective at the time the truck was sold by the Ford Motor Company.

However, this writer cannot concur with the majority view that there is probative evidence in this record supporting the jury finding that the push rod bent as a result of pressure placed on the brake pedal immediately before the accident.

At the time co-defendant Voyles ran into the rear of the petitioners' automobile, he was driving a two-ton Ford truck which had an empty weight of over five tons. The petitioners' vehicle was hit by Voyles' truck with such impact that the rear end of the vehicle was smashed under its own rear wheels. At the time of this collision the pavement was wet. A disinterested witness to the accident, put on by the petitioners, testified that as Voyles' truck was about to hit the petitioners' car "the left front wheel of the truck was sliding on the pavement as if the brakes had been applied."

Voyles' defense against petitioners' action was that the accident was unavoidable on his part because of a defective push rod in the braking system. At trial, Voyles testified that he applied his brakes immediately before the accident, but that the truck would not stop. Voyles' truck left no skid marks on the pavement before the collision.

It is undisputed that after the accident the brake push rod was found bent, and that this condition would prevent the brake pedal from engaging. The push rod in question is made of steel and is approximately six inches long and slightly more than one-third inch in diameter. It was bent almost at a 90° angle, about an inch from where it connects to the brake assembly. One of Voyles' witnesses at the trial testified that he tried to bend this rod when it was removed from the truck after the accident but was not able to do so. There is no evidence in the record about this particular rod's malleability or tensile strength other than the testimony of the above mentioned witness as to his inability to bend it.

As the majority opinion points out, nothing was wrong with the truck after the accident except the bent push rod. However, this circumstance alone is not probative evidence of the rod's malfunction before the accident. It is an equal possibility, indeed, perhaps a probability, that the rod was bent by the impact of the collision.

This, to my mind, is the great difficulty with the Court's result in this case: there is simply no probative evidence indicating that the braking system was defective other than the bent rod found *after* the accident. It is true that Voyles testified that the truck kept going after he applied the brakes; it is also true that this motion could equally have been the result of sliding on a slick pavement. There was testimony that this sort of sliding may leave no skid marks. Voyles' conclusion, then, that he failed to stop before the accident because of defective brakes, is just that, a conclusion. The testimony of fact in the record about the truck's failure to stop is limited to the fact that the truck failed to stop and the sole witnesses' observance of the truck's left front wheel "sliding" as if the brakes

locked. Furthermore, if the push rod was bent by the ordinary application of the brake pedal, as described by Voyles, then it is reasonable to suppose that the rod would continue to be defective after the accident. But the service manager where the truck was repaired, Voyles' witness, testified that he tried to bend the rod after the accident but was not able to do so. The expert testimony in the record also states that it would be impossible for a push rod of this type to be bent by pressure from the brake pedal.

This Court in reaching its result holds that: "Under the record, the malfunction of Voyles' brakes caused the accident. There is no other explanation in this record for the cause of the accident."

But the majority opinion in reaching this decision fails to point out any evidence that the malfunction caused the accident, other than the circumstance of the rod's bent posture after the collision. This is, as I have stated before, to me the vexing problem in this case: was there any evidence of malfunction before the collision? The majority opinion ought to consider and squarely face this problem. Instead the Court seems to reach its holding by taking the fact that the push rod was bent after the accident, and reasoning from that fact to the conclusion of co-defendant Voyles that his brakes failed to function before the accident because of the bent push rod found after the accident.

This conclusion is to me circular reasoning based upon circumstantial evidence which at best points equally to two possibilities of causation: (1) a defective push rod or; (2) the brakes' failure to catch on wet pavement. It has been repeatedly held in this jurisdiction that if the proven circumstances are consistent with either of two theories and there is nothing to show that one is more probable than the other, then neither theory can be taken as proven. Texas Sling Co. v. Emanuel, 431 S.W.2d 538 (Tex.Sup.1968); Continental Cas. Co. v. Fountain, 257 S.W.2d 338 (Tex.Civ.App.

—Dallas 1953, writ ref'd); Republic National Life Insurance Co. v. Bullard, 399 S.W.2d 376 (Tex.Civ.App.—Houston 1966, writ ref'd n.r.e.). To this writer, petitioners at most contend that the failure to stop could have been caused by either of the two possibilities discussed above, and the evidence does not indicate one is more probable than the other.

The Court also notes that Cy Walker, the Ford engineer, agreed that the evidence conclusively shows that the push rod bent either when Voyles applied the brakes to avoid the collision or as a result of the collision. This writer does not know to what purpose the Court states that Walker agrees with this conclusion; but it is an unfair treatment of the record if the Court is attempting to show that Walker admitted that it was possible for the push rod to bend upon application of the brakes. Walker testified that it was *not* possible for a push rod of this type to bend because of application of the brake pedal. In fact, Walker only responded to the hypothetical question that the rod must have bent either immediately before the collision or as a result of the collision after much argument.

This writer does not intend by this dissent to suggest that he does not agree that the doctrine of strict liability for injury resulting from defective consumer products is sound law. The strict liability doctrine does away with the need of a plaintiff to prove negligence, and has been deemed proper policy to protect the consuming public. Rather, this dissent is only based upon the proposition that the injured party has an obligation to introduce some evidence of probative force to show that the product was defective when it left the manufacturer's factory. This can be done by circumstantial evidence, but only when there is some indication that a defective product caused the damages. To my mind there is not such an indication in this case.

I would affirm the judgment of the Court of Civil Appeals.