FORD MOTOR COMPANY, Appellant,

v.

Eva STEAD et al., Appellees.

No. 5926.

Court of Civil Appeals of Texas,
Waco.

Nov. 9, 1978.

Noley R. Bice, Jr., Haley, Fulbright, Winniford, Bice & Davis, Waco, Maurice Walton, Walton & Walton, Granbury, for appellant.

W. V. Dunnam, Jr., Dunnam, Dunnam & Dunnam, Waco, for appellees.

## OPINION

JAMES, Justice.

This is a venue case. Plaintiff-Appellees Eva Stead, James Stead, William Stead and Sally Perkins et vir. A. C. Perkins, being the heirs at law of Burdett Edward Stead, deceased, joined by the Temporary Administrator of the Estate of said deceased, brought this suit against Defendant-Appellant Ford Motor Company, a foreign corporation with a permit to do business in Texas, which cause was in the nature of a products liability suit coupled with allegations of negligence on Defendant-Appellant's part. Specifically, Plaintiff-Appellees alleged that Defendant-Appellant Ford Motor Company manufactured a van which had been operated by the deceased, Burdett Edward Stead, in such a manner that carbon monoxide was permitted to enter into the interior of the van; and as a result of this defect the deceased suffered carbon monoxide poisoning which resulted in his death.

Defendant-Appellant filed its plea of privilege to be sued in Dallas County, Texas, the county of its legal residence in Texas; whereupon Plaintiff-Appellees controverted said plea of privilege under Sections 23 (private corporations) and 27 (foreign corporations) of Article 1995, Vernon's Texas Civil Statutes. The trial court after two hearings overruled Defendant-Appellant's plea of privilege, from which order it appeals upon five points of error which may be summarized as follows: (1) the trial court erred in permitting Eva Stead, the widow of deceased, to testify concerning the physical condition of the deceased prior to his death, and as to her observations of the deceased, upon the ground that such testimony was in violation of Article 3716, Vernon's Texas Civil Statutes, commonly called the Dead-Man Statute; (2) there was no evidence, and insufficient evidence to establish an exception to exclusive venue under Section 23, Article 1995; and (3) there was no evidence and insufficient evidence to establish an exception to exclusive venue under Section 27, Article 1995.

Section 23, Article 1995 in its pertinent parts provides:

"Suits against a private corporation . . may be brought in the county in which . . the cause of action or part thereof arose; . . . . ."

Section 27, Article 1995 in its pertinent parts provides:

"Foreign corporations, private or public, . . . not incorporated by the laws of this State, and doing business in this State, may be sued in any county where the cause of action or a part thereof accrued, . . .."

Prior to his death on March 3, 1969, the deceased had been employed by Retirement, Inc., the company which operated Francis Hospital in Waco, Texas. Said deceased's employment included the driving and use of the delivery van in question. Deceased's employer purchased the Ford van (which was manufactured by Defendant) for deceased's use in August, 1968, whereupon deceased began driving and operating said van that same month. Mrs. Eva Stead,

deceased's widow, testified that shortly after deceased started operating the van he began to act "kind of dopey and kind of drowsy"; that he complained to her that his stomach bothered him and that he had headaches and dizzy spells. She said he never exhibited any of these symptoms or made any of these complaints prior to the time he started driving the van.

On September 23, 1968, the deceased was placed in the hospital in Waco by Dr. Richard Fadal, M.D. About a week before he was admitted to the hospital, deceased had travelled from Waco to Longview, Texas, in the van. The widow testified that when deceased returned from this trip, he was "dizzy, sick, nauseated, his stomach was hurting him and he would be vomiting, and that he had diarrhea." It was because of these symptoms that he was admitted to the hospital. At stated, he died March 3, 1969. The deceased's daughter, Sally Perkins, having offered into evidence a written disclaimer of any interest and right to recover against Ford Motor Company for the death or injury to her father, testified substantially the same as her mother concerning the deceased's complaints and condition prior to the death. The testimony of Mrs. Perkins was therefore competent and did not violate the Dead-Man Statute.

G. O. Urbantke, a man who had spent some forty years in the automotive service business, testified that his examination of the van in the early part of 1969 revealed that the exhaust pipe on the van was positioned in such a manner that the exhaust which was emitted struck the inside portion of the bumper, so that the exhaust fumes were deflected back toward the rear doors of the van; that a crack at the back of the van permitted the exhaust fumes to be thrust inside of the van; that this defect was one which was built into the van at the time it was manufactured; that the van could not be operated without carbon monoxide fumes going from said exhaust into the van; that if the exhaust had been constructed properly, the fumes would have passed under the rear bumper instead of into the rear bumper and thence into the interior of the van.

We revert to Appellant's first point, to wit, that the trial court erred in permitting the deceased's widow, Mrs. Eva Stead, to testify as to the physical condition of the deceased prior to his death, and as to her observations of the deceased on the ground that such testimony violated Article 3716, the Dead-Man Statute. Assuming without deciding that the widow's testimony violated the Dead-Man Statute, such error if any was harmless under Rule 434, Texas Rules of Civil Procedure, because said widow's testimony was merely cumulative of and substantially the same testimony given by Mrs. Sally Perkins, deceased's daughter, whose testimony did not violate the Dead-Man Statute. Mrs. Perkins, having made a written disclaimer of any interest in the claim against Ford Motor Company growing out of the injuries to and death of her father, was competent to testify.

To come within the statutory prohibition of the Dead-Man Statute a witness must have or claim some actual interest in the subject matter of the suit pertaining to the estate of the deceased which may be affected by the judgment rendered. Disclaimer and divestiture of that interest ordinarily destroys the disqualification of the witness as a "party" under Article 3716; and it is immaterial that the primary purpose of the disclaimer was to remove that disability. *Ragsdale v. Ragsdale* (Tex.1944) 142 Tex. 476, 179 S.W.2d 291; *Monger v. Monger* (Waco CA 1965 Tex.Civ.) 390 S.W.2d 815, NRE. Appellant's first point of error is overruled.

Appellant's remaining points of error center around this argument: that Plaintiff-Appellees have failed to prove all of the elements of their cause of action insofar as their wrongful death claim is concerned in that they have failed to prove the cause of the deceased's death. We sustain this contention.

There were two hearings before the trial court on the venue question, the first being held on May 3, 1973, and the second over four years later, to wit, on August 12, 1977.

 

At the first hearing Mrs. Eva Stead (the widow) and G. O. Urbantke testified. At the conclusion of the first hearing, Plaintiff's counsel rested "subject to Dr. Fadal's testimony being completed by deposition"; whereupon Defendant's attorney told the court that after "we find out what Dr. Fadal is going to say, we may have some evidence, but that's the agreement of the parties we have at this time." At this point, the court said, "All right, then we will adjourn this hearing at this time, until we receive the deposition of Dr. Fadal, and possibly other witnesses, called by the Defendant."

Dr. Fadal's deposition was completed on June 25, 1973, a little over a month after the first hearing, and was filed in the District Clerk's office on July 5, 1973; however, neither at the second hearing nor at any other time was it ever offered into evidence or made a part of the statement of facts.

Dr. Fadal's testimony showed that in his opinion from treating the deceased, the cause of death was toxic hepatitis of the liver brought about by the deceased's "inhalation of combustion products of gasoline, hydro-carbon exposure." Without Dr. Fadal's testimony, the Plaintiffs failed to prove the cause of death.

■ The venue facts under Subdivisions 23 and 27 as applicable to the case at bar are: (1) that Defendant is a corporation; (2) that Plaintiffs have a cause of action against the Defendant; (3) that such cause of action or a part thereof arose in McLennan County. See *Van Waters and Rogers, Inc. v. Kilstrom* (Waco CA 1970 Tex.Civ.) 456 S.W.2d 570, no writ, involving Subdivisions 23 and 27; also see *Stone Fort National Bank of Nacogdoches v. Forbess* (1936) 126 Tex. 568, 91 S.W.2d 674, (Subdivision 23); *Socony Mobil Co., Inc. v. Southwestern Bell Telephone Co.* (Corpus Christi CA 1974 Tex.Civ.) 518 S.W.2d 257, syls. 23 and 24, no writ (Subdivision 23).

■ The elements of a cause of action for products liability has been stated by our Supreme Court in the following language:

"A manufacturer who places in commerce a product rendered dangerous to life or limb by reason of some defect is strictly liable in tort to one who sustains injury because of the defective condition." *Darryl v. Ford Motor Co.* (Tex.1969) 440 S.W.2d 630, 633. Also see *McKisson v. Sales Affiliates, Inc.* (Tex.1967) 416 S.W.2d 787.

■ As stated, without Dr. Fadal's deposition being included in the statement of facts, there is no competent evidence in the record to show deceased's cause of death. Having found error in the trial court's judgment we reverse and remand the cause in the interest of justice so that the record may be fully developed. *Buchanan v. Jean* (1943) 141 Tex. 401, 172 S.W.2d 688; *Morrow v. Shotwell* (Tex.1972) 477 S.W.2d 538; *Kandy, Inc. v. Presslor* (Waco CA 1977 Tex. Civ.) 556 S.W.2d 99, NRE. Indeed, where the record is manifestly not fully developed, it is our duty to reverse and remand. *Jackson v. Hall* (1948) 147 Tex. 245, 214 S.W.2d 458.

REVERSED AND REMANDED.