LUBBOCK MANUFACTURING
COMPANY, Appellant,

v.

INTERNATIONAL HARVESTER
COMPANY and Fontaine Truck
Equipment Co., Appellees.

No. 19942.

Court of Civil Appeals of Texas,
Dallas.

July 11, 1979.

Rehearing Denied Aug. 16, 1979.

Damon Ball, Groce, Locke & Hebdon, San Antonio, for appellant.

B. Jeff Crane, Jr., B. Lee Ware, Jr., Houston, W. Richard Davis, Strasburger & Price, Dallas, Lewin Plunkett, Wiley, Plunkett, Gibson & Allen, San Antonio, for appellees.

Before AKIN, ROBERTSON and HUMPHREYS, JJ.

ROBERTSON, Justice.

This is an appeal from a summary judgment denying appellant Lubbock Manufacturing Company the right of contribution under Tex.Rev.Civ.Stat.Ann. art. 2212 (Vernon 1971) from appellee International Harvester Company. Lubbock sought to establish that International Harvester was a joint tortfeasor along with Lubbock in connection with an accident in which a butane truck overturned and exploded. We affirm in part, reverse and remand in part, and reverse and dismiss in part.

On April 29, 1975, a tractor-trailer combination owned and operated by Surtigas S. A. overturned near Eagle Pass, Texas. The tank trailer loaded with butane and propane, exploded, and fifty people were injured, seventeen of whom later died. A products liability suit was brought by the injured parties in Maverick County against International Harvester Company, Lubbock Manufacturing Company, Fontaine Truck Equipment Company, Laredo Diesel, Inc., Modern Machine Shop, Inc., Surtigas S. A., and the personal representative of the deceased driver. The tank trailer portion of the vehicle was designed and manufactured by Lubbock. Fontaine designed and manufactured the "fifth wheel", a device used to connect the tractor to the trailer. International Harvester purchased the fifth wheel from Fontaine, sold it to Laredo Diesel, which in turn, sold it to Surtigas S. A. Surtigas then had Modern Machine Shop mount the fifth wheel.

International Harvester filed a plea of privilege to be sued in Dallas County. This plea was sustained and all suits, cross-claims and counter-claims as to International Harvester were transferred to Dallas County from Maverick County. In addition, Laredo Diesel and Modern Machine Shop's pleas of privilege were sustained and the actions as to these defendants, except for cross-claims and counter-claims involving International Harvester, were transferred to Webb County. The plaintiffs' ac-

tions against the remaining four defendants were consolidated and venue changed to Val Verde County pursuant to Tex.R.Civ.P. 257–259.

After commencement of the Val Verde trial, the actions against Fontaine were severed, and the plaintiffs entered into "Mary Carter" settlement agreements with Fontaine. Through these agreements, the plaintiffs released Fontaine, agreed to indemnify Fontaine against any further liability, and assigned to Fontaine an interest in each individual's cause of action against any other party. Final judgments were entered in these severed actions based upon the "Mary Carter" agreements. The plaintiffs' claims against Lubbock were disposed of in three different ways. Lubbock compromised and settled with eleven of the plaintiffs prior to the rendition of the jury verdict. In each settlement agreement, the plaintiffs released all claims against Lubbock and entered into agreed orders of dismissal with prejudice to Lubbock only. After the verdict, seventeen other injured plaintiffs were awarded judgments against Lubbock and fourteen of these judgments are currently on appeal. These judgments found both Lubbock and Fontaine strictly liable in tort to the plaintiffs. Pursuant to the doctrine in *Palestine Contractors, Inc. v. Perkins*, 386 S.W.2d 764 (Tex.1964),[1] the court reduced the amount of each verdict by one-half. The other three cases were settled after judgment and these plaintiffs released their claims against Lubbock.

Both the injured plaintiffs and Lubbock, seeking contribution, pursued their suits against International Harvester which had been transferred to Dallas County. Fontaine entered this suit in the posture of a third party defendant.[2] The injured plaintiffs' actions were severed and summary judgment was granted in favor of International Harvester. This judgment is now

final since no appeal was taken. International Harvester and Fontaine filed separate motions for summary judgment against Lubbock with respect to Lubbock's claims against International Harvester. The trial court granted both International Harvester and Fontaine's motions that Lubbock take nothing on its cross-claim against Harvester, and Lubbock appeals.

Lubbock raises five arguments on appeal. First, Lubbock argues that the trial court erred in granting International Harvester's motion for summary judgment because Lubbock is entitled to contribution pursuant to Tex.Rev.Civ.Stat.Ann. art. 2212 (Vernon 1971). Second, Lubbock contends that the trial court erred in holding that the Val Verde litigation barred Lubbock's cross-claim against International Harvester for contribution and that the Val Verde court's application of the *Palestine Contractors* Doctrine extinguished Harvester's duty to pay contribution to Lubbock. Third, Lubbock finds error in the trial court's rendition of summary judgment on the basis that International Harvester committed no independent act of negligence. Fourth, Lubbock argues that the trial court erred in overruling Lubbock's motion for partial summary judgment. Lubbock's last contention is that the trial court erred in granting Fontaine's motion for summary judgment that Lubbock take nothing from International Harvester.

■ Lubbock contends that it is entitled to contribution from International Harvester pursuant to article 2212, which provides:

Any person against whom, with one or more others, a judgment is rendered in any suit on an action arising out of or based on tort except in causes wherein the right of contribution or of indemnity or of recovery over, by and between the defendants is given by statute or exists under the common law, shall, upon pay-

---

1. This case held that a covenant not to sue given to a settling joint tortfeasor precludes a plaintiff from recovering more than half the damages from the non-settling tortfeasor.

2. We have been unable to ascertain from the record what Fontaine's status actually is in this

action. Fontaine maintains in its motion for summary judgment and its brief that its status is similar to that of a third party defendant, although it has filed no pleading in this cause and no other party has claimed any relief against it.

ment of said judgment, have a right of action against his co-defendant or co-defendants and may recover from each a sum equal to the proportion of all of the defendants named in said judgment rendered to the whole amount of said judgment. If any of said persons co-defendant be insolvent, the recovery may be had in proportion as such defendant or defendants are not insolvent; and the right of recovery over against such insolvent defendant or defendants in judgment shall exist in favor of each defendant in judgment in proportion as he has been caused to pay by reason of such insolvency.

To come within the ambit of article 2212, certain prerequisites must be met. First, a tortfeasor must discharge the liability to plaintiff of the other tortfeasor. *Callihan Interests, Inc. v. Duffield*, 385 S.W.2d 586 (Tex.Civ.App.—Eastland 1964, writ ref'd); *Traveler's Insurance Co. v. United States*, 283 F.Supp. 14 (S.D.Tex.1968). Second, a tortfeasor must be established as a judgment debtor through the rendition of a contested or agreed judgment. *Lower Neches Valley Authority v. City of Beaumont*, 392 S.W.2d 733 (Tex.Civ.App.—Beaumont 1965, writ ref'd n. r. e). Finally, a tortfeasor receives a contribution only if he has paid a disproportionate share of the plaintiffs' damages. *Gattegno v. The Parisian*, 53 S.W.2d 1005 (Tex.Comm'n App. 1932, holding approved); *Callihan Interests, Inc. v. Duffield, supra.* The settled cases must be examined in light of these prerequisites to determine whether Lubbock can recover contribution.

### The Settled Cases

Lubbock settled with the plaintiffs in fourteen cases. Each settlement was incorporated in an agreed dismissal order which was entered with prejudice. As a general rule, a judgment of dismissal entered by agreement of the parties pursuant to a compromise or settlement of a suit becomes a judgment on the merits and constitutes a final judgment. *Stephenson v. Gaines*, 298 S.W. 401 (Tex.Comm'n App. 1927, holding approved); *Rhoades v. Prudential Leasing Corp.*, 413 S.W.2d 404, 407 (Tex.Civ.App.—Austin 1967, no writ). Accordingly, we hold that although these orders are final judgments, Lubbock is not entitled to contribution because the orders fail to extinguish any potential liability of International Harvester to the plaintiffs as required by *Callihan*, 385 S.W.2d at 587. Each agreed dismissal order releases Lubbock from any liability to the plaintiffs. In eight of the settled cases, the release states: "It is understood and agreed that this is a release of Lubbock Manufacturing Company, its officers, agents, and employees only. It is not a release of any claims or causes of action held by us [plaintiffs] against any other party . . ." This clause specifically releases Lubbock but does not release any other claims held by the plaintiffs against other parties. Four of the settlement agreements contain the following language: "The receipt of which sums [paid by Lubbock] are hereby acknowledged . . [plaintiffs] do hereby release, quit and forever discharge Lubbock Manufacturing Co. and its officers, agents and employees of and from any and all actions, causes of actions, claims and demands for damages . . . ." Lubbock is the only party named in this release and the general rule is that if a party is not named in a release, he is not released. *McMillen v. Klingensmith*, 467 S.W.2d 193 (Tex.1971). Thus, none of these plaintiffs' claims against International Harvester were released or extinguished in the settled cases.[3]

Lubbock contends that *Callihan Interest Inc. v. Duffield*, 385 S.W.2d 586 (Tex.Civ. App.—Eastland 1964, writ ref'd) supports its position because in that case, the court held that an agreed judgment would satisfy the requirement of a judgment under article 2212. We disagree. In *Callihan*, the

---

3. The other two settlement agreements and releases were not brought up as part of the record. Since the burden of proof is on Lubbock Manufacturing Co. to show error, it was their duty to make these available. We assume, therefore, that the releases in these two cases are similar to those before us.

agreed judgment before the court contained a release by the plaintiffs of all their claims against a non-party joint tortfeasor. In *Travelers Insurance Co. v. United States,* 283 F.Supp. 14 (S.D.Tex.1968), the parties had entered into an agreed order of dismissal with prejudice and after a discussion of both *Callihan* and article 2212, the court held that these orders were final judgments for the purpose of article 2212. The court then set out the requirements of the statute and stated:

> What the statute [article 2212] does require is that the agreement receive the sanction of the court and that a judgment be entered finally disposing of the original plaintiffs' cause of action against the defendant and the alleged *joint tortfeasor.* A dismissal of the plaintiffs' cause of action with prejudice upon a settlement agreement of the parties accomplishes this result. 283 F.Supp. at 30 [emphasis added].

Since the release agreements did not extinguish the original plaintiffs' cause of action against International Harvester, these settled cases fail to meet the first prerequisite of article 2212. This is a logical result because the plaintiffs, after executing these releases, could still sue International Harvester and recover. To hold that Lubbock also has a cause of action for contribution against International Harvester would place International Harvester in the position of defending two actions and also paying two judgments, one for the plaintiffs' damages and one for Lubbock's claim for contribution. Thus, Lubbock is not entitled to contribution under article 2212 from International Harvester in any of the settled cases. *See* Comment: Contribution Among Joint Tortfeasors, 44 Tex.L.Rev. 333 (1966).

### The Appealed Cases

Lubbock contends that the trial court erred in granting International Harvester's motion for summary judgment as to the appealed cases. Lubbock argues that the ground for summary judgment as set out in International Harvester's motion is not sufficient as a matter of law to form the basis for a summary judgment against Lubbock.

In its motion for summary judgment, International Harvester states that Fontaine manufactured the defective product, that International Harvester sold it, and, thus, International Harvester has a right of indemnity from Fontaine. By virtue of this indemnity relationship, International Harvester argues that its liability is derived from Fontaine's liability to the plaintiffs and that International Harvester and Fontaine should be viewed as one entity for the purposes of this suit. On this basis, International Harvester contends that Lubbock has received contribution from Fontaine by the application of the Palestine Contractor's doctrine in the Val Verde litigation and that Lubbock is collaterally estopped from recovering contribution from International Harvester. By the same reasoning, International Harvester states that the Mary Carter agreements releasing Fontaine from liability also served to release International Harvester. All of these arguments are based on the premise that International Harvester's liability is derivative from that of Fontaine because of the manufacturer-retailer and indemnitor-indemnitee relationship between them. This is the only ground presented in International Harvester's motion for summary judgment and thus, it is the only ground that this court can consider in reviewing the judgment. *Avinger v. Campbell,* 499 S.W.2d 698, 702 (Tex.Civ.App.—Dallas), writ ref'd n. r. e., 505 S.W.2d 788 (Tex.1974); *Castillo v. American States Insurance Co. of Texas,* 550 S.W.2d 408, 409 (Tex.Civ.App.—Dallas 1977, no writ). Lubbock argues, however, that International Harvester's liability is direct rather than derivative from Fontaine. We agree with Lubbock.

Restatement (Second) of Torts § 402A (1965) states:

> (1) one who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to

and does reach the user or consumer without substantial change in the condition in which it is sold; (2) the rule stated in Subsection (1) applies although (a) the seller has exercised all possible care in the preparation and sale of his product, and (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

Texas courts have followed section 402A in holding that strict liability in tort lies against the distributor as well as the manufacturer of goods. *Rourke v. Garza,* 530 S.W.2d 794 (Tex.1975); *Pittsburg Coca-Cola Bottling Works of Pittsburg v. Ponder,* 443 S.W.2d 546 (Tex.1969); *Darryl v. Ford Motor Co.,* 440 S.W.2d 630 (Tex.1969); *McKisson v. Sales Affiliates, Inc.,* 416 S.W.2d 787 (Tex.1967).

■ The rationale behind holding a retailer directly liable to the consumer is set out in comment C to section 402A. This comment states:

> On whatever theory, the justification for the strict liability has been said to be that the seller, by marketing his product for use and consumption, has undertaken and assumed a special responsibility toward any member of the consuming public who may be injured by it; that the public has the right to and does expect, in the case of products which it needs and for which it is forced to rely upon the seller, that reputable sellers will stand behind their goods; that public policy demands that the burden of accidental injuries caused by products intended for consumption be placed upon those who market them, and be treated as a cost of production against which liability insurance can be obtained; and that the consumer of such products is entitled to the maximum of protection at the hands of someone, and the proper persons to afford it are those who market the products.

Any liability that International Harvester may have stems from the fact that it sold a defective product that caused the injuries to the plaintiffs and not from its manufacturer-retailer and indemnitor-indemnitee relationship with Fontaine. Since International Harvester's liability is direct and independent from that of Fontaine, International Harvester cannot benefit from the Mary Carter agreements insofar as contribution among joint tortfeasors is concerned. Neither can it benefit from the application of the *Palestine Contractor's* doctrine because its liability is independent from that of Fontaine. It follows that collateral estoppel does not apply since one of the elements of collateral estoppel is that the parties must be the same or must be in privity with one another. *Benson v. Wanda Petroleum Co.,* 468 S.W.2d 361 (Tex.1971). Since International Harvester's liability is direct and not derivative of Fontaine's liability, International Harvester was not a party or in privity with a party in the Val Verde litigation and collateral estoppel is not a bar to Lubbock's claim for contribution. We hold, therefore, that Lubbock's claim for contribution is not barred by the ground asserted in International Harvester's motion for summary judgment and that as a matter of law, the trial court erred in granting summary judgment on that basis. Accordingly, we reverse and remand that portion of International Harvester's summary judgment that purports to dispose of the appealed cases.

### *Fontaine's Motion For Summary Judgment*

■ Lubbock argues that Fontaine lacked standing to move for summary judgment for International Harvester. We agree. Tex.R.Civ.P. 166-A(b) states that any party against whom any claim is asserted may move for summary judgment. No claims against Fontaine are asserted in the Dallas County suit, and no other party has asserted any claim against it. Fontaine argues that by virtue of its indemnity relationship with International Harvester, International Harvester and Fontaine should be treated as one party and it asserts that it has no liability as a matter of law. This argument overlooks the fact that Fontaine is not actually a party to the present action, and, therefore, has no standing to move for summary judgment. Moreover, only if a judgment is entered against International

914

Harvester could indemnity be sought against Fontaine. Thus, the only possible claim against Fontaine is a potential one, which has not been asserted in this suit. *See generally Packer v. First Texas Savings Association of Dallas*, 567 S.W.2d 574 (Tex. Civ.App.—Eastland 1978, writ ref'd n. r. e.); *Cruz v. Guajardo*, 502 S.W.2d 610 (Tex.Civ. App.—Corpus Christi 1973, no writ). We hold that the trial court erred in granting Fontaine's motion for summary judgment and, accordingly, reverse the judgment and dismiss Fontaine's motion for lack of jurisdiction. *See Yett v. Cook*, 115 Tex. 205, 281 S.W. 837 (1926); *Hollar v. Jowers*, 310 S.W.2d 721 (Tex.Civ.App.—Eastland 1958, writ ref'd n. r. e.); *McFarling v. Lapham*, 489 S.W.2d 435 (Tex.Civ.App.—Beaumont 1972, writ ref'd n. r. e.); *Wise v. Pena*, 552 S.W.2d 196 (Tex.Civ.App.—Corpus Christi 1977, writ dism'd).

Accordingly, we affirm that portion of the summary judgment that disposes of the settled cases, reverse that portion of the judgment concerning the appealed cases, and reverse the summary judgment granted Fontaine and dismiss Fontaine's action.