**Kettenfabrik August THIELE, Appellant,**

v.

**Fred K. CHICK, Jr. et al., Appellee.**

**No. 18086.**

Court of Appeals of Texas,
Houston (1st Dist.).

Feb. 4, 1982.

Rehearing Denied March 11, 1982.

Don Weitinger, Weitinger, Steelhammer & Tucker, Percy L. Wayne Isgitt, Isgitt & Associates, Houston, for appellant.

Riddle & Allen, Bill Allen, Houston, for appellee.

Before BASS, SMITH and DYESS, JJ.

BASS, Justice.

This is a products liability case.

On November 10, 1980, the court granted a motion for partial summary judgment by August Thiele and Kulkoni, Inc., that Ethel Chick take nothing individually because Mrs. Chick's cause of action was barred by the two-year statute of limitations. The cause of action by an adult survivor, Carrie Tiemann, was held barred by the statute of limitations.

On January 27, 1981, this cause came before a jury; the plaintiffs were Fred Kennedy Chick, Jr., Anna Ruth Chick and Linda Sue Chick, minors, represented by Mrs. Ethel Chick. The defendants were Kulkoni, Inc. and August Thiele.

The following evidence was received:

1) The deposition of Officer C. L. Taylor, a traffic reconstruction expert who investigated the scene of the accident, was admitted. There was no eyewitness to the accident; the officer spoke with a man who had been driving along side Mr. Chick's truck just prior to the accident and who said that both trucks were doing about 30 mph. This man had pulled into a nearby service station as Chick's truck proceeded around the curve and overturned; when he pulled into the station he heard a loud pop and a rattling sound.

2) The deposition of Dr. Alvin D. Thomas, Jr., Technical Director of the Failure Analysis Laboratory for the Radian Corporation, a metallurgical engineer, who was asked to perform tests upon a load boomer by Dr. Thomas S. Mackey. He filed a report with Dr. Mackey.

3) The deposition of Dr. Thomas S. Mackey, the President of Key Metals and Minerals Engineering Corporation, a consulting engineering company, who is a metallurgical engineer. Mackey identified a load boomer he received from the plaintiff's attorney; one unit was intact, and the other had a separated hook.

After reading the Radian Corporation report, Dr. Mackey concluded that the load binder had both design and manufacturing defects in the socket and in the ball. The ball was "out of round" and pulled out of the socket. The tolerances that were measured by Radian Corporation were such that the original design made it difficult to produce a uniform, concerted load binder that would not be out of round in the socket and would not be out of round in the ball. In his opinion, the defect in the ball and socket existed before the accident. He testified that this boomer was bound to fail and that the faulty manufacture was a producing cause of the accident.

4) The testimony of Mr. E. E. Bollinger, Chief Dispatcher and Terminal Manager for Woodard Trucking. He testified that Mr. Chick's truck should have weighed between 26,000 and 27,000 pounds and that his load was between 40,000 and 42,000 pounds. The policy of Woodard was to have at least four chains on this type of load, and he felt that the other chains were lost at the scene of the accident.

5) The testimony of Dr. Rex McLellan, Professor of Material Science at Rice University, with a degree in metallurgy. He testified that he performed metal structure tests of the boomer that failed and of a new boomer supplied by Thiele. McLellan concluded that the metal was not fatigued and that it had been torn by mechanical overloading. The boomer had a working load limit of about 8,000 pounds and a proof load limit of about 16,400 pounds. He found no great malformation in the ball.

6) The testimony of Mr. Joe Bob Duncan, a fellow trucker who observed Mr. Chick's load on the day of the accident, testified that he saw four chains on the truck.

7) The testimony of Mr. George Greene, Jr., a consulting mechanical engineer. He testified that he ran microscopic tests on the boomer and relied upon a previous metallurgical report for some of his findings; that he found no metallurgical problems with the steel; that he felt it was important for the manufacturer to notify consumers as to the load capacity of the boomer; that this was a defective design for a boomer; and that a boomer should last longer than this one, which was manufactured sometime between 1968 and 1972, did.

A letter written by Mr. Greene to Mr. Greg Laughlin, attorney, was admitted. The letter stated that:

failure of the ball socket ... is imminent with usage. The design is such that no warning is apparent of an impending failure. The subject load binder is defectively designed and unreasonably dangerous to the user while being utilized in its intended manner.

8) The deposition of Douglas Muster, Professor of Engineering at the University of Houston, was suppressed as to the appellant, Thiele, and applied only to Kulkoni. Muster testified that the boomer failed as a result of its faulty design and production.

9) The testimony of Ernest Craig, general manager for Triangle Transportation Company, was admitted. He was a truck driver in 1973 and for a total of eight years. He testified that an experienced truck driver can earn between twenty and thirty-five thousand dollars income per year.

10) The testimony of Mrs. Ethel Chick, widow of the deceased, confirmed that the deceased's salary was $200 per week and that he was in excellent health. "He was family-oriented. He liked ... to get together to go places, do things, go visit family, take the kids on trips. He hoped to buy a home for the family and to send the

children to college." The son has been affected psychologically by his father's death. His school grades have deteriorated, and his mind wanders.

11) Freddie Chick, Jr., the deceased's son, age 11, testified that he remembers all the nice things he used to do with his dad.

The court granted appellant Thiele's motion that the court take judicial notice of the rules and regulations of the Federal Highway Administration, Department of Transportation, including Motor Carrier Safety Regulations, 49 C.F.R. § 313.85 (1972). Appellee argued they did not have proper notice of this evidence. The judge took notice of the regulation under the condition that it not be submitted to the jury. The regulation apparently requires more boomers per load weight than was on Mr. Chick's truck.

The plaintiffs, Freddie Chick, Jr. and Anna Ruth Chick, through their guardian and attorney ad litem, and the defendants, August Thiele and Kulkoni, entered into a damage limitation agreement. This agreement was read to the judge in open court. The court approved the agreement.

The case was submitted to the jury in the form of nine special issues. Before submission, the appellee objected to Issues No. 7 and No. 8 on the grounds that there was no evidence to support the issues and because an affirmative finding as to these issues would not prove a breach of any duty by the decedent to the appellant. The objections were overruled. The appellant, August Thiele, objected to Special Issues No. 1, No. 2, No. 3, No. 4, No. 5, No. 6, and No. 9 because there was no evidence and/or insufficient evidence to support affirmative findings. Thiele asserted also that there were no pleadings to support No. 1, No. 2, No. 5 and No. 6. These objections were overruled.

The jury found that the boomer was *not* defectively designed but that it *was* defectively manufactured by Thiele. It found that the defective manufacture *was* "a producing cause of the wreck" in which Fred Chick was killed. It did *not* find that the boomer was defective because of failure of the manufacturer to warn the user of the load capacity of the boomer. It found that *two* load binders *were* used to secure Mr. Chick's load, but that the use of two load binders was *not* a producing cause of his accident. The jury awarded $200,000 to Fred K. Chick, Jr. and $225,000 to Anna Ruth Chick.

Appellant, Thiele, filed a motion for judgment "non obstante verdicto" and, alternatively, a motion to disregard special issues and for additional findings. Thiele's bases for these motions were that the evidence was insufficient to sustain the verdict and that the jury's findings were incomplete. The appellee filed a motion for judgment on the verdict.

At the hearing on the appellee's motion for judgment the attorneys for both sides testified as to the damage limitation agreement and as to Thiele's alleged repudiation of the agreement. The appellees stated that they had been willing to settle according to the agreement. Thiele's attorney testified that he had not been instructed by Thiele to pay the settlement amount. "My instructions are to proceed with the Motion for judgment n. o. v., and to . . . proceed with possible appeal, if indeed such an appeal is warranted."

In the final judgment the court overruled Thiele's motions. The court found that Thiele had renounced and repudiated the damage limitation agreement. The court further ordered that Kulkoni, Inc. recover by way of indemnity against Thiele.

Both Thiele and Kulkoni filed motions for a new trial which were overruled. August Thiele has prosecuted this appeal.

The appellant has fifteen points of error. The first ten points deal with the sufficiency of the evidence: The appellees, Fred Chick, Jr. and Anna Ruth Chick, reply to the appellant's first nine points with three reply points.

The evidence for both sides in this case has been shown so as to dispense with the necessity of discussing the sufficiency of the evidence. The evidence was sufficient: to support the overruling of the appellant's

motion j. n. o. v.; to overrule the motion to disregard the jury's findings on special issues; to support the overruling of the appellant's objections to the court's charge; to support the jury's finding that the boomer was defectively manufactured, and that the boomer was the producing cause of the accident; and to support the jury's finding that the use of two boomers was not a producing cause of the accident.

The recent case of *Fort Worth Steel and Machinery Co. v. Norsworthy*, 570 S.W.2d 132 (Tex.Civ.App.—Tyler 1978, writ dism'd w. o. j.), expressed the law in strict liability cases:

> Appellees first seek to impose liability on both appellants based on strict liability tort. In order to sustain his burden of proof, the appellee was required to establish that: 1) appellant sold the product in a defective condition, 2) the product reached the appellee without substantial change, and 3) the defective condition of the product caused the injury to appellee. *McKisson v. Sales Affiliates, Inc.*, 416 S.W.2d 787 (Tex.1967); *John Deere Co. v. Ramirez*, 503 S.W.2d 382 (Tex.Civ.App.—Amarillo 1973, writ dism'd); *Wright v. Climatic Air Sales, Inc.*, 527 S.W.2d 518 (Tex.Civ.App.—Houston [1st Dist.] 1975, n. w. h.). The Supreme Court stated in *Technical Chemical Co. v. Jacobs*, 480 S.W.2d 602 (Tex.1972): "[i]n strict liability cases, proof of negligence is excused; but neither § 402A [Restatement (Second) of Torts (1965) ], nor our former decisions have excused proof that the defect in the product was the cause of the injuries." Proof of causation is a necessary element of a strict liability case. *Technical Chemical Co. v. Jacobs*, supra; *Pittsburgh Coca-Cola Bottling Works of Pittsburgh v. Ponder*, 443 S.W.2d 546 (Tex.1969); *Darryl v. Ford Motor Co.*, 440 S.W.2d 630 (Tex.1969); *Menking v. Bishman Manufacturing Co.*, 496 S.W.2d 762 (Tex.Civ.App.—Corpus Christi 1973, n. w. h.).

■ The appellant, Thiele, argues that the appellees did not prove that the boomer was defective. The jury found that the boomer was not "defectively designed" but that it was "defectively manufactured." A product may be proven to be defective in either one of these two ways or defective in the failure of the manufacturer to warn the consumer; and, it need not be proven defective in all three ways in order to sustain strict liability. See *Helicoid Gage Division of American Chain and Cable Co. v. Howell*, 511 S.W.2d 573, 575 (Tex.Civ.App.—Houston [14th Dist.] 1974, writ ref. n. r. e.). There is sufficient evidence to sustain the jury's finding that the boomer was defectively manufactured.

■ Appellant maintains that there was no direct evidence of any probative force that the product contained a manufacturing defect. A number of expert witnesses expressed their opinion that the boomer was defectively manufactured and that a defect in the manufacture of the ball and socket caused the accident. There is much circumstantial evidence that the boomer was defective. Circumstantial evidence is probative evidence as to whether a product was defectively manufactured. See *Turner v. General Motors Corporation*, 584 S.W.2d 844, 848 (Tex.1979); *Darryl v. Ford Motor Company*, 440 S.W.2d 630 (Tex.1969). In *Darryl*, the Supreme Court wrote:

> This Court in the *McKisson* case extended the strict liability doctrine to products other than foodstuffs. To exclude circumstantial evidence that the product was defective at the time of the sale would frustrate the beneficial purposes of the doctrine. It would be equally difficult, if not impossible, for the plaintiff to rebut by direct evidence all of the conceivable posibilities (sic) which would account for the defective condition other than the existence of the defect at the time of the sale. Such direct evidence should not be required, particularly when dealing with a latent defect.

If the ball and socket were defective in that they were "out of round" or that the ball was too small for the socket, this would be, according to testimony of the experts, a latent defect. Circumstantial evidence of the defective nature of the ball and socket,

along with direct evidence, was introduced; and the jury believed this evidence.

■ The appellant argues that the testimony of the witness, Dr. Mackey, that the boomer was defectively manufactured, is composed of presumptions based upon presumptions. Dr. Mackey, a metallurgical engineer, testified as an expert witness. He had tests performed on the boomer by the Radian Corporation. He then drew conclusions about the boomer from these tests and from his expertise in metallurgy. This was permissible testimony by an expert witness.

■ The appellant next argues that the appellees failed to prove that a defect existed when the product left the possession of the manufacturer. If the ball was too small and out of round, these were "latent defects," and there was no way for the appellees to prove, with direct evidence, that the ball was not altered between the time it was manufactured and the time of the accident. There was no evidence presented that the steel ball, which is a very durable item, had been changed. Circumstantial evidence suggesting no change is sufficient. See *Darryl v. Ford Motor Company*, 440 S.W.2d at 632.

Appellant contends that the appellees did not prove that the boomer was "unreasonably dangerous" as required in strict liability cases. He points out that the bifurcated test of unreasonable danger advocated in *Henderson v. Ford Motor Company*, 519 S.W.2d 87, 92 (Tex.1974), and *General Motors v. Hopkins*, 548 S.W.2d 344 (Tex.1977), were not used in the present case. These cases established a two-prong test to determine whether a product was manufactured to be unreasonably dangerous.

In *Turner v. General Motors Corp.*, 584 S.W.2d 844 (Tex.1979), however, the Supreme Court abolished this two-prong test:

In doing so, we have determined that the bifurcated test and the writing as to this in *Henderson* and *Hopkins* will no longer govern. We are persuaded to this conclusion by the inclusiveness of the idea that jurors would know what ordinary consumers would expect in the consumption or use of a product, or that jurors would or could apply any standard or test outside that of their own experiences and expectations.

\* \* \* \* \* \*

The stated reason for the alternative test of the purdent (sic) manufacturer does not justify its continued use.

There was no finding by the jury that Mr. Chick or his trucking company either misused the product or assumed the risk by an unreasonable use of the product. Thiele argues that more than two load binders were required on the truck and appellant's motions for a judgment notwithstanding the verdict and for additional findings should have been sustained. The appellant requested that the court take judicial notice of Department of Transportation "Motor Carrier Safety Regulations", 49 C.F.R. § 393.85 (1972). The court took judicial notice of the regulation. It refused, however, to allow the jury to learn of the regulation because there was a question whether the regulation was a surprise to the appellees. The regulation required that the number of boomers used on a truck have an aggregate working load limit in excess of the weight load. The jury did not know of the regulation, and it was asked to answer no special issues concerning the regulation. In *Ruiz v. Flexonics*, 517 S.W.2d 853 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n. r. e.), the court held:

If the misuse [of a product] is based on the violation of an ordinance or a statute, it must depend on whether the purpose of the law was to afford protection against the hazard involved in the particular case at bar. There must be proof that the user knew or should have known of the occasion for compliance with the ordinance or statute. If the plaintiffs knew or should have known of the ordinance or statute and nevertheless proceeded voluntarily and unreasonably to make use of the [product] in question and were injured and damaged by such use, they would be barred from recovery.

■ Violation of a statute must be pled, and evidence must be introduced to estab-

lish, as a matter of law, non-compliance with the statute. *O & A Express, Inc. v. Murray*, 614 S.W.2d 873, 875–876 (Tex.Civ. App.—El Paso 1981, writ granted).

■ The appellant did not attempt to prove that the deceased knew or should have known of the regulation. Since the appellant did not prove that Mr. Chick was negligent per se, there was no basis for the court to make an additional finding of negligence nor to grant a j. n. o. v.

The evidence reveals that the appellant, Thiele, repudiated the agreement when it asked for a judgment notwithstanding the verdict and/or a new trial. The appellant's attorney even admitted that Thiele had not authorized him to pay the settlement amount and that Thiele intended to appeal. The court was justified in entering judgment on the verdict.

The appellant's last two points of error affect the distributor of the boomer, Kulkoni, Inc. For this reason, Kulkoni has filed a brief which takes issue with these two points.

■ The appellant, Thiele, argues that the total shifting of liability from the distributor to the manufacturer of a product is no longer the law. The appellant cites the Restatement (Second) of Torts § 402A (1965), that holds the seller strictly liable.

§ 402A. Special Liability of Seller of Product for Physical Harm to User or Consumer

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applied though

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

The right of contribution among joint tortfeasors who have been held strictly liable to an injured consumer is recognized in Texas:

Any person against whom, with one or more others, a judgment is rendered in any suit on an action arising out of, or based on tort, except in causes wherein the right of contribution or of indemnity, or of recovery, over, by and between the defendants is given by statute or exists under the common law, shall, upon payment of said judgment, have a right of action against his co-defendant or co-defendants and may recover from each a sum equal to the proportion of all of the defendants named in said judgment rendered to the whole amount of said judgment . . .

Tex.Rev.Civ.Stat.Ann. art. 2212 (Vernon 1971).

The Texas Supreme Court devised a test to determine when one tortfeasor is entitled to indemnity from another under the provisions of art. 2212:

In order to determine whether the loss should be shifted from one tortfeasor to another the proper approach is to consider the one seeking indemnity as though he were a plaintiff suing the other in tort, and then determine whether such a one as plaintiff, though guilty of a wrong against a third person, is nevertheless entitled to recover against his co-tortfeasor. *Austin Road Co. v. Pope*, 147 Tex. 430, 216 S.W.2d 563, 565 (1949). When the courts have found, even in strict liability cases, that one tortfeasor has violated a duty to another tortfeasor they have indemnified the injured tortfeasor.

See generally, *Bell Helicopter Co. v. Bradshaw*, 594 S.W.2d 519, 535 (Tex.Civ.App.—Corpus Christi, 1979, writ ref'd n. r. e.); *General Motors Corp. v. Simmons*, 558 S.W.2d 855, 859–61 (Tex.1977).

In *Champion Mobile Homes v. Rasmussen*, 553 S.W.2d 237 (Tex.Civ.App.—Tyler 1977, writ ref'd n. r. e.), the court held that the distributor of a dangerously defective mobile home had a right to indemnification from the manufacturer of the homes. The distributor had been held strictly liable for the plaintiff's injuries in the defective home. The problem was a latent defect in the electrical wiring system of which the distributor had been unaware. The distributor had done nothing wrong but to distribute the product. The court held that "the vendor owes no duty to the manufacturer to inspect for latent defects," and it awarded indemnification to the distributor.

Under the present law, Kulkoni, Inc. has a right to indemnity from August Thiele. The jury found that the producing cause of Mr. Chick's death was that the boomer had been defectively manufactured. This was a latent defect. There was no evidence that Kulkoni altered this product before distributing it. Although Kulkoni has been held strictly liable under § 402A as the "seller," it has not been proven that Kulkoni violated any duty toward August Thiele so as to preclude indemnification.

Thiele argues that the law concerning indemnification has recently changed. The basis for its argument is *Lubbock Manufacturing Co. v. International Harvester Co.*, 584 S.W.2d 908 (Tex.Civ.App.—Dallas 1979, writ ref'd n. r. e.). In the *Lubbock* case the Dallas court refused to grant the manufacturer a right to contribution from the distributor, International Harvester. Lubbock had entered into Mary Carter agreements which limited its liability, but International Harvester was not a party to the agreements. The court went on to hold, however, that International Harvester's liability as a distributor was "direct" rather than "derivative" liability through the manufacturer. The court quoted from comment c of 2402A of the Restatement as the basis for holding a retailer directly liable to the consumer:

> [T]he public has the right to and does expect, in the case of products which it needs and for which it is forced to rely

upon the seller, that reputable sellers will stand behind their goods.

Thiele urges that the liability of Kulkoni, Inc. is "direct" and not "derivative" through Thiele and that Kulkoni is not entitled to indemnification. Despite the *Lubbock* decision, the law in strict liability cases has not changed. In *B&B Auto Supply v. Central Freight Lines, Inc.*, 603 S.W.2d 814, 816–17 (Tex.1980), the Supreme Court held that in negligence cases in which indemnity is governed by Tex.Rev.Civ.Stat.Ann. art. 2212a, there is no longer any reason to require one tortfeasor to indemnify another tortfeasor when both have been found negligent. But the court specifically stated that its holding:

> is not intended to bar indemnity in cases in which there is a contractual basis for indemnity or cases in which one party's liability is purely vicarious. We express no opinion whether this holding would extend to a strict liability case or a case involving a combination of negligent and strictly liable tort feasors.

In *County of Nueces v. Svajda*, 608 S.W.2d 752 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n. r. e.), the Corpus Christi Court faced the same issue presented to this court. Nueces County was strictly liable for damages to the plaintiff. The court held that since the *County of Nueces* case was a strict liability case and not a negligence case, that portion of the *B&B Auto Supply* opinion which abolished the "winner-take-all" concept of indemnification in negligence cases was not applicable to the *County of Nueces* case.

The *B&B Auto Supply* opinion and the *County of Nueces* opinion are controlling in the present case. There were other considerations in the *Lubbock Manufacturing* opinion, including the fact that the parties had signed Mary Carter agreements, that distinguish it from the present case. Furthermore, there was more evidence in *Lubbock* to prove that International Harvester was "directly" liable to the plaintiffs than there was evidence in the present case to prove that Kulkoni was directly liable to the appellees. The Supreme Court has not

specifically abolished the old indemnification rule in strict liability cases.

Appellant's points of error are denied, and the judgment of the trial court is affirmed in all respects.